No. 23-5416

===============================================================

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
——————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

MICHAEL HARVEL,

*Defendant/Appellant.*
——————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
——————

BRIEF OF APPELLANT HARVEL
——————

===============================================================

Kevin M. Schad
Attorney for Appellant
Appellate Director
Federal Public Defender's Office
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
513.929.4834
Kevin_schad@fd.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT REGARDING ORAL ARGUMENT .............................1

STATEMENT OF THE ISSUES........................................................2

STATEMENT OF THE CASE ........................................................3

SUMMARY OF THE ARGUMENT ...................................................14

ARGUMENT..................................................................................16

I.    COUNTS TWO THROUGH FIVE OF THE SUPERSEDING
      INDICTMENT WERE REQUIRED TO BE DISMISSED AS BEING
      BROUGHT OUTSIDE THE STATUTE OF LIMITATIONS....................16

II.   THE INDICTMENT FAILED TO SUFFICIENTLY ALLEGE THAT
      HARVEL ACTED "UNDER COLOR OF LAW".....................................23

III.  THE COURT SHOULD HAVE GRANTED A MISTRIAL WHEN
      GOVERNMENT WITNESSES CONTINUED TO DISCUSS
      SUBJECTS WHICH HAD BEEN EXCLUDED FROM THE TRIAL.......26

IV.   FEDERAL RULE OF EVIDENCE 413 VIOLATES THE
      CONSTITUTIONAL RIGHT TO DUE PROCESS ...................................31

V.    PRE-INDICTMENT DELAY REQUIRED DISMISSAL OF THE
      SUPERSEDING INDICTMENT..............................................................37

CONCLUSION .................................................................................41

CERTIFICATE OF COMPLIANCE...................................................42

CERTIFICATE OF SERVICE

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

## TABLE OF AUTHORITIES

### Cases

*Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020)........................................................................................................19

*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)..............................................31

*Coker v. Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977)........................................................................................................................18

*Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990)......................................................................................31

*Dubin v. United States*, 599 U.S. 110, 143 S. Ct. 1557, 1567, 216 L. Ed. 2d 136 (2023) ...............................................................................................19

*Michelson v. United States*, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948) ...............................................................................32

*United States v. Abrams*, 761 F. App'x 670, 675 (9th Cir. 2019)..........................33

*United States v. Asher*, 910 F.3d 854 (6th Cir. 2018)..............................................35

*United States v. Baltimore*, 482 F. App'x 977 (6th Cir. 2012) ...............................39

*United States v. Briggs*, 141 S. Ct. 467, 208 L. Ed. 2d 318 (2020)......................20

*United States v. Clark*, 24 F.4th 565, 579 (6th Cir. 2022)......................................35

*United States v. Costin*, 59 F. App'x 726, 730 (6th Cir. 2003).............................22

*United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021) ..............................16

*United States v. Edwards*, 783 F. App'x 540, 544 (6th Cir. 2019) ........................31

*United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998)......................33, 34

*United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008) ................................16

*United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020)................................23

*United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)........................................................................................................................18

*United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005)...................................33

*United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017) ...................................37

*United States v. Marion*, 404 U.S. 307, 323, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468 (1971) .............................................................................................21

**TABLE OF AUTHORITIES**
(continued)

**Page**

*United States v. Massengill*, 769 F. App'x 342, 347 (6th Cir. 2019).....................29

*United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998)..................................33

*United States v. O'Brien*, 953 F.3d 449, 455 (7th Cir. 2020) ................................16

*United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) ..............................25

*United States v. Palma*, 58 F.4th 246, 249 (6th Cir. 2023) ...................................23

*United States v. Rankin*, 929 F.3d 399, 405 (6th Cir. 2019)..................................23

*United States v. Ross*, 703 F.3d 856, 876 (6th Cir. 2012) .....................................38

*United States v. Rosse*, 716 F. App'x 453, 463 (6th Cir. 2017) .............................38

*United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020)................................35

*United States v. Stamper*, 106 F. App'x 833, 836 (4th Cir. 2004).........................33

*United States v. Stevens*, 177 F.3d 579, 584 (6th Cir. 1999).................................27

*United States v. Thomas*, 404 F. App'x 958, 961 (6th Cir. 2010).........................38

*United States v. Woods*, 14 F.4th 544, 558 (6th Cir. 2021) ...................................27

*United States v. You*, 74 F.4th 378, 389 (6th Cir. 2023).......................................26

*Wooden v. United States*, 212 L. Ed. 2d 187, 142 S. Ct. 1063, 1072
  (2022)..................................................................................................................19

**Statutes**

18 U.S.C. § 3282 ......................................................................................................16

**Other Authorities**

159 F.R.D. 51,52......................................................................................................34

H.R. REP. 103-466 (Mar. 25, 1994).......................................................................20

VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT
  OF 1994, PL 103–322, September 13, 1994, 108 Stat 1796...............................19

**Rules**

Federal Rule of Evidence Rule 413 .........................................................................32

## JURISDICTIONAL STATEMENT

This appeal follows from the district court's judgment imposing a sentence of 204 months incarceration based upon a jury verdict. (R.177, Judgment, PAGE ID # 2855)  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.  A timely notice of appeal was filed on April 26, 2023. (R.179, Notice of Appeal PAGE ID # 2867)

## STATEMENT REGARDING ORAL ARGUMENT

Harvel's Issue I, which addresses which statute of limitations applies to civil rights violations involving kidnapping and sexual abuse, is a matter of first impression with this Court, and therefore Harvel submits that oral argument will assist in the resolution of this appeal.

Respectfully requested,

 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellant

## STATEMENT OF THE ISSUES

1. Because 18 U.S.C. § 3282's five year statute of limitations applied to counts two through five of the superseding indictment, and those counts alleged conduct outside that time, the district court erred in not dismissing them prior to trial.

2. The indictment did not allege facts supporting the element of "under color of law," such that dismissal of the indictment was appropriate prior to trial.

3. A Government witness's decision to continue to bring up excluded evidence in front of the jury, despite warning, warranted a mistrial.

4. Federal Rule of Evidence 413 is unconstitutional, in that it violated Due Process by allowing propensity evidence.

5. The Government's five year delay in bringing charges against Harvel violated Due Process, and required dismissal.

## STATEMENT OF THE CASE

Appellant Michael Harvel worked for Cumberland County, Tennessee from 1999 to 2018.  He spent the first twelve years with the county road department, and then later was appointed as Director of the County Solid Waste Department in 2011.  He worked until February of 2018, when he was suspended by then mayor Kenneth Carey. (R.148, Trial PAGE ID # 1299) Harvel's position included hiring people for the county's recycling center.  The recycling center was also used by the county to allow people who had fines and community service from criminal convictions to work repaying the county and completing their community service.

In March, 2017, a complaint was filed against Harvel to the Crossville, TN police department by AO, one person who was working community service. AO alleged that Harvel had engaged in unwanted touching of her at work. That complaint apparently laid dormant until February, 2018, when another complaint was filed.  Based upon this new complaint, officers spoke with Harvel and obtained video from the recycling center.  The video did not confirm the complaint made. (R.150, Trial PAGE ID # 1768)  However, the police opened an investigation, which eventually led to state criminal charges.

On July 12, 2021, a grand jury sitting in the Middle District of Tennessee returned an indictment charging Harvel with: five counts of willfully depriving another of their civil rights under color of law, in violation of 18 U.S.C. § 242; and one count of kidnapping, in violation of 18 U.S.C. § 1201. (R.3, Indictment PAGE ID # 4)  On November 15, 2021, the indictment was superseded by adding additional counts.  In addition, some of the pending counts were altered to include different times and allegations.

After the superseding indictment was filed, the defense moved to dismiss counts two through six of the indictment as brought outside the statute of limitations. (R.58, Motion to Dismiss PAGE ID # 371)  The Government responded by arguing that because those counts were "punishable by death," there was no statute of limitations. (R.65, Response PAGE ID # 403)[1]  The district court ultimately agreed with this argument, finding "[b]ased on the language of the statute, a violation of 18 U.S.C. § 242 that includes kidnapping or aggravated sexual abuse is a crime 'punishable by death.' Therefore, 18 U.S.C. § 3281 applies to Counts One [sp] through Five notwithstanding the fact that the death penalty cannot be imposed in this case

---

[1] The Government did agree to dismiss count six, which was a substantive kidnapping count. 18 U.S.C. § 1201.

should the Government prove Mr. Harvel's guilt on those counts." (R.82,

Order PAGE ID # 507)

Harvel also prior to trial moved to limit the Government's use of "other

acts" evidence it intended to present pursuant to Federal Rule of Evidence 413

– six other alleged victims of sexual assault who were not named in the

indictment. The district court denied this motion, although it did limit some

of the information the Government could provide.

Additionally prior to trial, Harvel moved to dismiss the indictment based

upon pre-indictment delay. The Government claimed there was no delay, as

they did not begin their investigation until 2020, and then COVID interfered

with their prosecution. The district court denied this motion as well, finding

that "[b]ecause Mr. Harvel has failed to establish intentional delay, it is

unnecessary for the Court to determine whether he has shown substantial

prejudice to his right to a fair trial." (R.103, Order PAGE ID # 655)

Harvel proceeded to trial on December 6, 2022. KJ testified that she

worked at the Cumberland County recycling center in late 2017.

Approximately two weeks after she started, she stated that Harvel came up

behind her on the sorting line and put his hand up her shirt and down her

pants. He did this on several occasions. (R.147, Trial PAGE ID #990) She

would tell him to stop, but he did not stop.  She described an incident of being groped in the breakroom, and another while in the parking lot. (PAGE ID # 999-1002)  She admitted that she did not call the police, testifying that they would not believer her. She eventually joined a civil suit against the county and Harvel, and obtained a settlement of $45,000. (PAGE ID# 1009)  She was directed to the civil suit by former fellow employee JH.

CS started working at the recycling center in 2017.  She had community service to work off.  CS stated that "the first week that I was there, Mr. Harvel grabbed my – my behind on the way back from the bathroom." (R.147, Trial PAGE ID # 1082)  She recounted another incident where Harvel in December of 2017 allegedly rubbed her private area outside of her pants.  She did not tell police about these incidents; however, a detective later contacted her, and she made a statement.  She also joined in the civil suit, and obtain $53,000. (PAGE ID # 1094)

JS started working at the recycling center in October of 2015.  She testified that she was fondled by Harvel "on a daily basis." (PAGE ID # 1134)  She would yell at him to stop, but he would continue.  JS indicated that one time, Harvel had her work at the Peavine center, a remote recycling center.  Harvel came to the location, and tried to get her to touch his penis. (PAGE ID

6

# 1161)   She also joined the civil suit, and received a settlement of $125,000. (PAGE ID # 1168)

During examination of JS, she blurted out, directly to Harvel from the stand "You know, Mike, you would have been a good boss, but you – you abused your power. I hate – I tried talking to him because I went through problems as a child, and I felt - - " (R.147, Trial PAGE ID # 1136)  This generated a defense objection, as the parties had agreed to limit information about prior abuse allegations.  After this, the court said "just hold on for one moment," and the Government then asked JS, in rapid succession: "Did you tell him that something had happened to you before"; "but did you tell him that something had happened before?"; and "what did you tell him had happened before, just generally speaking, like." (PAGE ID # 1136-37)  JS then stated "I went through issues as a child, and I'd be damned if I'm going to go through this as an adult." (PAGE ID # 1137)

After a break, in which the jury was removed and the defense requested a mistrial, the Government apologized, and stated that the evidence was "admissible" and curable by a limiting instruction. (PAGE ID # 1138)  The Government also promised that it "would not discuss the issue further."

7

(PAGE ID # 1139)  Satisfied with this, the court recalled the jury, and provided a limiting instruction.

The next day, during cross-examination, defense counsel asked JS " You were never raped in this case, were you?" to which JS replied "No, I wasn't, but I was threatened. And I went through it as a child, and I also told him that I would not go through it as an adult." (R.148, Trial PAGE ID # 1214) Defense counsel objected to the court, and JS then yelled "Don't even.  Don't even."  The court then asked the jury to leave the courtroom, and while this occurred, JS stated to Harvel "you're disgusting." (PAGE ID # 1215)  The court denied a renewed motion for mistrial.

JC was another employee who worked at the recycling center starting in September of 2014.  She started out working off community service, but was later offered employment by Harvel.  She stated that upon the offer, he took her into his office, and pulled up her shirt. (PAGE ID # 1324)  He then pulled out his penis, and placed it in her mouth.  He did it again the next day. (PAGE ID # 1336)  She left, and never came back to the recycling center.

MM started at the recycling center in June of 2016.  According to her, while she was working on the sorting line, Harvel would grab her behind. (PAGE ID # 1367)  He would also touch her by trying to put his hand up her

shirt or down her shorts.  MM also joined the civil suit, and obtained

$105,000. (PAGE ID # 1395)  She never quit working at the recycling center,

despite these alleged incidents.

JW worked at the center from 2016 through 2018.  She testified that on

one occasion, Harvel slid money down her shorts. (R.149, Trial PAGE ID #

1423)  Harvel allegedly tried to pull her shirt up on occasion, and grab at her

chest. (PAGE ID # 1424)  She said that, as a defense to Harvel's actions, she

and others had spray bottles of water, and that they would spray him if he

came near.

JT began her term of community service at the recycling center in 2017.

She claimed that Harvel touched her behind, and one time asked her to bend

over so he could see it. (R.149, Trial PAGE ID # 1473)  JT said that because

of this, she was afraid Harvel would kill her. (PAGE ID # 1476)  She also

claimed to have seen Harvel place his finger in a hole of pants worn by

another employee.  She also joined the civil suit, and obtained $90,000. (PAGE

ID # 1481)   In her statement to police, she claimed only that Harvel pinched

her behind once. (PAGE ID # 1492)

JH worked at the recycling center since 2013, and at the time of trial,

still worked there.  She testified that once, Harvel placed his dirty hand on her

breast, causing it to stain her shirt. (PAGE ID # 1557)  Another time, Harvel allegedly came up to her and grabbed both of her breasts. (PAGE ID # 1559) She testified that she told Harvel on many occasions that if he didn't stop his actions with her and others, he would "get caught." (PAGE ID # 1567)  When she was approached by police to make a statement, however, she indicated there were no problems with Harvel, and that if anything happened with any employee, it would have been unintentional on Harvel's part. (PAGE ID # 1568)  JH initiated the civil suit, and recruited others to join it. (PAGE ID # 1600)  She obtained a $66,000 settlement.

AO started her community service in 2017.  She testified that one occasion, when she went into Harvel's office to ask for a day off, Harvel took his finger and pulled her sweatpants down in the front, to the extent he could see her private parts. (R.149, Trial PAGE ID # 1651)  She had a tattoo of stars in that area, and Harvel told her he was trying to "count the stars." She quit, and then went to police to make a report.

AH was working off her community service at the recycling center in 2016.  She testified that Harvel would approach her at the sorting line, and touch her inappropriately. (R.150, Trial PAGE ID # 1688)  She stated that on one occasion, Harvel placed his hand under her bra.  When she threatened to

10

tell on him, Harvel allegedly stated "Who's going to believe you – if you tell anybody, who's going to believe you?" "You're a criminal. I'm a commissioner. I know all these people. They're my friends." (PAGE ID # 1689)  AH obtained $122,500 in the civil suit.

BJB also worked at the recycling center, starting in 2016.  At the time of trial, she still worked there.  She claimed to have seen some of the incidents alleged by MM, CS and others. (PAGE ID # 1703)  She alleged no abuse of her person, but still obtained $5000 in the civil suit.

ED began working at the recycling center in the summer of 2015.  She first worked as part of community service, but was later hired as the dispatch person for animal control.  She testified as to several incidents where Harvel allegedly put his penis near or in her mouth. (PAGE ID # 1785)  She also stated that she had intercourse with Harvel in his office. (PAGE ID # 1789)  She did not feel like she could say no. (PAGE ID # 1792)  On another occasion, Harvel drove her to a landfill and allegedly had intercourse with her in a shed. (PAGE ID # 1800)  She did not tell anyone of these incidents for five years – until the civil lawsuit. (PAGE ID # 1822)

KM was completing community service at the recycling center in 2016. She stated that on one occasion, Harvel tried to put his finger in a hole in her pants. (PAGE ID # 1849)

Harvel testified in his own defense and presented several character witnesses. Harvel denied all allegations. Harvel stated that he never threatened anyone with being fired or going to jail at any point. (R.151, Trial PAGE ID # 2084) He answered all questions about each allegation against him, denying that he did anything inappropriate. (PAGE ID # 2091) He explained that the environment at the recycling center was rough, and that inappropriate humor abounded. Harvel explained that he fully cooperated with police, providing them with statements as well as video evidence. (R.152, Trial PAGE ID # 2185)

On December 15, 2022, the jury returned a verdict of guilty as to all counts except count eleven, for which Harvel was acquitted. Harvel appeared for sentencing on April 20, 2023. After hearing defense objections to the Guidelines, the court removed the enhancements for obstruction of justice, and determined the advisory Guidelines range to be life (Adjusted BOL 43, Criminal History I). (R.189, Sentencing PAGE ID # 2996) After hearing

arguments from both sides, the court imposed a sentence of 204 months

incarceration. (R.189, Sentencing PAGE ID # 3104)

## SUMMARY OF THE ARGUMENT

### I.

18 U.S.C. § 3282 provides for a five year statute of limitations for 18 U.S.C. § 242 offenses, unless such § 242 offense is "punishable by death." Appellant Havel's § 242 charges alleged kidnapping and sexual assault. Because these offenses are not "punishable by death," the five year statute of limitations applies. The district court's reading of the statute otherwise was reversible error.

### II.

The superseding indictment alleged that Harvel was acting "under color of law" by kidnapping and/or committing sexual abuse on employees of the recycling center. But the indictment alleged no facts supporting the allegation that Harvel's actions were done "under color of law." The indictment did not inform Harvel of the facts and circumstances, such that Harvel could have mounted a proper defense. Therefore, the motion to dismiss these counts should have been granted.

### III.

Government witness JS was informed, prior to taking the stand, not to get into allegations she had been molested as a child. Despite this, the

Government asked questions which solicited this conduct.  Despite removing the jury and again admonishing JS, she brought the topic up again in front of the jury, and then yelled at Harvel that he "was disgusting."  These actions required a mistrial.

## IV.

Federal Rule of Evidence 413 violates Due Process, as it upends the long-standing prohibition on the use of propensity evidence to prove guilt.  Because extensive evidence was introduced in this case only through use of Rule 413, a new trial is warranted.

## V.

According to the Government, Appellant Harvel's federal criminal conduct began in 2014 and lasted until 2017.  His conduct resulted in state charges, and a state arrest in early 2018.  Despite this, the Government did not indict Harvel until 2021.  By that time, key witnesses who could have assisted the defense had died.  The extensive pre-trial indictment delay required dismissal of the indictment.

## ARGUMENT

### I.    COUNTS TWO THROUGH FIVE OF THE SUPERSEDING INDICTMENT WERE REQUIRED TO BE DISMISSED AS BEING BROUGHT OUTSIDE THE STATUTE OF LIMITATIONS

The indictment, filed on July 12, 2021, alleged counts occurring more than five years prior.  A superseding indictment did not remove these counts. Those counts were subject to dismissal as being outside the statute of limitations.  The district court's ruling to the contrary was reversible error.

**Standard of Review**

A review of a district court's interpretation of a statute of limitations is an issue of law reviewable de novo. *United States v. Edington*, 992 F.3d 554, 556 (6th Cir. 2021).

This Court "determine[s] the applicable statute of limitations, and whether the charges were timely brought, based on the face of the indictment." *United States v. O'Brien*, 953 F.3d 449, 455 (7th Cir. 2020). Unless otherwise specifically delineated in a statute, the statute of limitations for a non-capital case is five years. *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008), 18 U.S.C. § 3282.  The indictment (which was superseded on November 15, 2021) for which Harvel proceeded to trial contained ten violations of 18 U.S.C. § 242.  At issue in this appeal is whether Counts two

16

through five of the superseding indictment were "punishable by death," such that no statute of limitations applied.

Count two of the superseding indictment alleged that in September 2014, Harvel committed a violation of 18 U.S.C. § 242 which included kidnaping and aggravated sexual abuse. Count three of the superseding indictment alleged that in September 2014, Harvel committed a violation of 18 U.S.C. § 242 which included kidnaping and aggravated sexual abuse. Count four of the superseding indictment alleged that in November 2015, Harvel committed a violation of 18 U.S.C. § 242 which included aggravated sexual abuse. Finally, count five of the superseding indictment alleged that in December 2015, Harvel committed a violation of 18 U.S.C. § 242 which included kidnaping. (R.46, Superseding Indictment PAGE ID # 330-332)

The Government conceded below that the conduct in these counts occurred outside 18 U.S.C. § 3282's time limitation, but argued that because the above crimes were "punishable by death," there was no statute of limitations for these offenses pursuant to 18 U.S.C. § 3281. (R.65, Response PAGE ID # 403) The district court ultimately agreed with this argument, finding "Based on the language of the statute, a violation of 18 U.S.C. § 242 that includes kidnapping or aggravated sexual abuse is a crime 'punishable by

death.' Therefore, 18 U.S.C. § 3281 applies to Counts One [sp] through Five

notwithstanding the fact that the death penalty cannot be imposed in this case

should the Government prove Mr. Harvel's guilt on those counts." (R.82,

Order PAGE ID # 507)

Harvel's indictment did not charge crimes which were punishable by

death.  Although the language of 18 U.S.C. § 242 states that "if death results

from the acts committed in violation of this section or if such acts include

kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to

commit aggravated sexual abuse, or an attempt to kill, shall be fined under

this title, or imprisoned for any term of years or for life, or both, or may be

sentenced to death," the last phrase is exclusively reserved for those § 242

offenses which result in death. Of import here, neither kidnaping, *United*

*States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), nor

aggravated sexual abuse, *Coker v. Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L.

Ed. 2d 982 (1977), are punishable by death. Neither the substantive federal

crime of kidnapping (18 U.S.C. § 1201) nor aggravated sexual abuse (18

U.S.C. § 1519) carry a "punishable by death" provision.  Given this, the

Government's argument that the "sentenced to death" portion of the statute

should control these counts is without merit.

18

Additionally, to the extent that this Court determines there is some ambiguity in the language of the statute, a review of the legislative history dispels any reliance on the "punishable by death" phrase to determine the statute of limitations for these counts.

Where there is ambiguity in the language of a statute, the Supreme Court has consulted legislative history to provide clarity. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749, 207 L. Ed. 2d 218 (2020); see also *Wooden v. United States*, 212 L. Ed. 2d 187, 142 S. Ct. 1063, 1072 (2022) (statutory history and purpose can help to confirm a reading of a statute). Here, the addition of "punishable by death" to 18 U.S.C. § 242 was not added until 1994. See VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994, PL 103–322, September 13, 1994, 108 Stat 1796.  This was long after non-capital offenses were stricken from the death penalty; therefore, Congress could not have intended the statute of limitations applicable under 18 U.S.C. § 3281 to apply to either kidnapping or sexual abuse offenses.

Further, although not dispositive, this Court may consider the heading used by Congress in making the 1994 amendment to 18 U.S.C. § 242. See *Dubin v. United States*, 599 U.S. 110, 143 S. Ct. 1557, 1567, 216 L. Ed. 2d 136 (2023)("the title of a statute and the heading of a section' are 'tools

19

available for the resolution of a doubt' about the meaning of a statute.")  Here,

the heading of the 1994 amendment was, "Death Penalty for Civil Rights

Murders."  That heading shows Congress intended to authorize the death

penalty for murders in violation of section 242.  Further, the Congressional

record reveals:

> Section 3(l) amends sections 241, 242, 245(b) and
> 247(c)(1) of title 18 of the United States Code to
> authorize the death penalty for violation of four of the
> major Federal Civil Rights laws **if such violation results
> in death**: conspiracy to injure, threaten or intimidate any
> United States citizen in the free exercise or enjoyment of
> any Federal right; the willful deprivation of any Federal
> right on account of the victim's status as an alien or due
> to his color or race; the willful interference with or
> attempted interference with any person's Federal rights,
> whether or not under color of law, on the basis of color,
> race, religion or national origin; and causing damage to
> or attempting to damage religious property because of
> its religious character or obstructing or attempting to
> obstruct one's free exercise of religious beliefs.

H.R. REP. 103-466 (Mar. 25, 1994) (emphasis added)

There can be no doubt that Congress never intended the phrase "punishable

by death" to apply to § 242 kidnapping or sexual abuse charges.

The Supreme Court's decision in *United States v. Briggs*, 141 S. Ct. 467,

208 L. Ed. 2d 318 (2020) is not dispositive.  In *Briggs*, the Supreme Court

held that the Uniform Code of Military Justice's use of "punished by death"

20

allowed the statute of limitations for rape offenses to be without end, even though rape could not be punished by death.  While at first blush this case would seem to have applicability to the instant situation, it does not.  First, the Government itself in *Briggs* differentiated "civilian" offenses from those of service persons.  As the Court noted: "the Government contends that the military context dictates a different outcome. Among other things, the Government argues that a rape committed by a service member may cause special damage by critically undermining unit cohesion and discipline and that, in some circumstances, the crime may have serious international implications." 141 S.Ct. at 472.  The Court also noted that Congressional intent for statutes of limitation differed between civil and military cases in this regard, finding that Congress changed the penalty for rape in civilian cases after *Coker*, but not for military cases. *Id.*  Thus, the 1994 changes to 18 U.S.C. § 242 differ both in form and substance to the statute in *Briggs*. *Briggs* therefore does not control or inform the decision here.

The Supreme Court has cautioned that "criminal statutes of limitation are to be liberally interpreted in favor of repose." *United States v. Marion*, 404 U.S. 307, 323, 92 S. Ct. 455, 465, 30 L. Ed. 2d 468 (1971).  Here, that can only mean application of 18 U.S.C. § 3282 to the charges.  Finally, vacation of

these counts requires a new trial on all charges, not just resentencing.  Counts two through five were the "meat" of the Government's allegations against Harvel, and represented most of the felony counts.  The only remaining felony conviction related to JS, whose veracity was hotly contested.  Had the jury not passed on the other felony counts, the result of the trial may well have been different.  See *United States v. Costin*, 59 F. App'x 726, 730 (6th Cir. 2003)(If "there is a reasonable possibility that the jury did rely on inadmissible evidence in reaching its verdict," new trial on remaining counts appropriate.)  Therefore, a remand for a new trial on the remaining counts is necessary.

## II.   THE INDICTMENT FAILED TO SUFFICIENTLY ALLEGE THAT HARVEL ACTED "UNDER COLOR OF LAW"

The district court erred in not dismissing the indictment for failing to allege a federal offense, as the superseding indictment did not allege facts supporting the allegation that Harvel acted under color of law.

### Standard of Review

"[T]his court applies a de novo standard to review the sufficiency of an indictment." *United States v. Howard*, 947 F.3d 936, 942 (6th Cir. 2020).

"To be legally sufficient, an 'indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie the defendant's commission of the crime.' [citation omitted]. Although the statutory language of the offense may be used, it 'must be accompanied with such a statement of the facts and circumstances.'" *United States v. Palma*, 58 F.4th 246, 249 (6th Cir. 2023).  "[S]uch a statement of the facts and circumstances [ ] will inform the accused of the specific offence, coming under the general description, with which he is charged." *United States v. Rankin*, 929 F.3d 399, 405 (6th Cir. 2019).

Here, the superseding indictment alleged that Harvel was acting "under color of law" by kidnapping and/or committing sexual abuse on employees of the recycling center. But the indictment failed to allege any facts supporting the allegation that Harvel's actions were made "under color of law." The indictment therefore failed to inform Harvel of the facts and circumstances, such that Harvel would have been able to mount a proper defense.

In denying this claim, the district court found "[t]he Court agrees with the Government that the Superseding Indictment fairly informs Mr. Harvel of the charges brought against him and provides him the ability to invoke double jeopardy in prosecutions for the same conduct." (R.82, Order PAGE ID # 508) While this finding parrots the legal standard, it does not explain how this indictment, which alleges no acts constituting "under color of law," informed Harvel of the actual allegations. The district court erred in determining that the bare bones allegation in Harvel's superseding indictment sufficed under the Constitution.

Exacerbating this failure is that the district court also denied the defense request for a bill of particulars. Harvel motioned in the alternative that if the district court would not dismiss the indictment for failing to allege a federal offense, it should require the Government to provide a bill of

particulars so Harvel could defend.  In denying this request, the district court

found that the discovery provided sufficient notice to Harvel. (R.83, Order

PAGE ID # 510)  "The purpose of a bill of particulars is to give a defendant

key factual information not contained in the indictment, so as to enable him

or her to prepare a defense and avoid surprise at trial." *United States v. Page*,

575 F. App'x 641, 643 (6th Cir. 2014).  Mere reference to the discovery

process does not negate the need for a bill pf particulars, especially here

where the Government alleged acts outside the scope of the indictment.

Therefore, the denial of Harvel's request for a bill of particulars, given the

defects in the indictment, prejudiced Harvel's right to a fair trial.  For these

reasons, the convictions must be vacated.

## III.   THE COURT SHOULD HAVE GRANTED A MISTRIAL WHEN GOVERNMENT WITNESSES CONTINUED TO DISCUSS SUBJECTS WHICH HAD BEEN EXCLUDED FROM THE TRIAL

Prior to trial, the Government agreed that it would not elicit evidence from its witnesses of prior sexual assaults committed on them by other persons.  Despite this, one Government witness testified several times about these unrelated, highly prejudicial acts.  The court abused its discretion in not declaring a mistrial under these circumstances.

### Standard of Review

"We review the district court's decision to deny [a defendant]'s motion for a mistrial for abuse of discretion." *United States v. You*, 74 F.4th 378, 389 (6th Cir. 2023).

Prior to trial, the defense brought to the court's attention it's concern that the Government may try to elicit, through its witnesses, evidence that in their past, they had been victims of sexual abuse by another person. Specifically, as to witness JS, the defense flagged her abuse as a child, and indicated that disclosure of that fact to the jury would be highly prejudicial. (R.146, Trial PAGE ID # 912)   The Government agreed that it would not pursue this line of inquiry.   Despite this, witness JS twice informed the jury of these facts.  The second time, it was after a lengthy delay, and instruction

26

not to engage in such testimony.  The failure to call a mistrial under these circumstances was an abuse of discretion.

A district court "properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial." *United States v. Stevens*, 177 F.3d 579, 584 (6th Cir. 1999). Whether an improper reference or comment before the jury requires a mistrial requires analysis of these factors: "(1) whether the remark was unsolicited, (2) whether the ... line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence presented against the defendant." *United States v. Woods*, 14 F.4th 544, 558 (6th Cir. 2021).

During examination of JS, she blurted out, directly to Harvel from the stand "You know, Mike, you would have been a good boss, but you – you abused your power. I hate – I tried talking to him because I went through problems as a child, and I felt - - " (R.147, Trial PAGE ID # 1136)  This generated a defense objection, as it clearly tread upon the topic.  After this, the court said "just hold on for one moment," and the Government then asked

27

JS, in fairly rapid succession: "Did you tell him that something had happened to you before"; "but did you tell him that something had happened before?"; and "what did you tell him had happened before, just generally speaking, like." (PAGE ID # 1136-37)  JS then stated "I went through issues as a child, and I'd be damned if I'm going to go through this as an adult." (PAGE ID # 1137)

After a break, in which the jury was removed and the defense requested a mistrial, the Government apologized, and stated that the evidence was "admissible" and curable by a limiting instruction. (PAGE ID # 1138)  The Government also promised that it "would not discuss the issue further." (PAGE ID # 1139)  Satisfied with this, the court recalled the jury, and provided a limiting instruction.

JS was not done, however, with infecting the jury process.  The next day, during cross-examination, defense counsel asked JS " You were never raped in this case, were you?" to which JS replied "No, I wasn't, but I was threatened. And I went through it as a child, and I also told him that I would not go through it as an adult." (R.148, Trial PAGE ID # 1214)  Defense counsel objected to the court, and JS then yelled "Don't even.  Don't even." The court then asked the jury to leave the courtroom, and while this occurred, JS stated to Harvel "you're disgusting." (PAGE ID # 1215)

Under these circumstances, a mistrial was necessary. While the Government made some effort to have JS speak "generally," they did directly and intentionally elicit the topic of her child abuse by their questions. That JS could not "thread the needle" for them does not absolve them from bringing up the topic, and causing the problem. Second, while there was a limiting instruction, given the exchange and the emotions, the jury could not have been reasonably expected to forget what they heard and saw. While there was no explicit bad faith evidenced by the government, they knew that the questions they asked about her past experience would elicit an emotional response. And they certainly would have wanted the jury to see that response. Finally the remarks were not a "small part of the evidence presented." They occurred over two days, and resulted in the jury twice being removed from the courtroom. It was the only time a witness directly addressed Harvel. The impact of these incidents cannot be overstated. In light of what occurred, the district court was duty bound to call a mistrial.

In evaluating whether a mistrial should have been granted, this Court's "primary concern is fairness to the defendant." *United States v. Massengill*, 769 F. App'x 342, 347 (6th Cir. 2019). Here, fairness to Harvel required the

district court to grant the requested mistrial.  The court's failure to do so

requires reversal of the convictions, and a remand for a new trial.

## IV.   FEDERAL RULE OF EVIDENCE 413 VIOLATES THE CONSTITUTIONAL RIGHT TO DUE PROCESS

The district court erred in determining that Federal Rule of Evidence 413 did not violate Due Process.  To the extent that Rule 403 applies to application of Rule 413 admissions, the district court abused its discretion in admitting this evidence.

### Standard of Review

The issue of whether a Rule of Evidence is unconstitutional is one of law.  Issues of law are reviewable by this Court de novo. *United States v. Edwards*, 783 F. App'x 540, 544 (6th Cir. 2019).

"When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process . ." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The Supreme Court held in *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674, 107 L. Ed. 2d 708 (1990) that there may be a "type of evidence [that] is so extremely unfair that its admission violates 'fundamental conceptions of justice.'"  Admission of evidence under Rule 413 meets this standard.

Federal Rule of Evidence Rule 413 provides: "In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." This rule, which allows the use of propensity evidence without reservation, violates long standing notions of Due Process, and thus, is invalid on its face.

United States jurisprudence has a long-standing prohibition against the use of propensity evidence to obtain a guilty verdict. As the Supreme Court has held: "[t]he state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 475–476, 69 S.Ct. 213, 218–219, 93 L.Ed. 168 (1948).

Rule 413 upends this bedrock principle.  It allows for not only admission of propensity evidence, but also provides no limitation on its introduction. While some circuits have read into Rule 413 a requirement that a court apply FRE Rule 403, no such requirement is contained within the language of the Rule itself.  As written, therefore, Rule 413 is so "extremely unfair" that its use "violates fundamental conceptions of justice."

The district court, in denying this claim, did not make a substantive analysis, but found "As I understand the landscape, the Second, Eleventh, Ninth, Seventh, Third, Tenth and Eighth Circuits have all addressed this and did not find that there was constitutional issues with 413 evidence. So I'll deny it on that ground." (R.188, Hearing PAGE ID # 2970)

This Court has never passed on the constitutionality of Rule 413. However, the circuits that uniformly hold that because of the FRE Rule 403 "safeguard," there is no constitutional Due Process violation. See *United States v. Stamper*, 106 F. App'x 833, 836 (4th Cir. 2004); *United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005); *United States v. Mound*, 149 F.3d 799, 801 (8th Cir. 1998); *United States v. Abrams*, 761 F. App'x 670, 675 (9th Cir. 2019); *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998).

In *Enjady*, the Tenth Circuit acknowledged that "Rule 413 raises a serious constitutional due process issue." *Enjady* at 1430.  The court noted "The rule was passed by a Congress that overrode concerns expressed by the Judicial Conference and its Advisory Committee on the Federal Rules of Evidence and its Advisory Committee on the Federal Rules of Criminal Procedure. A number of commentators have expressed views on its constitutionality, several arguing that it is unconstitutional." *Id.*

Moreover, commentators at the time of passage of Rule 413 noted this problem.  When Congress adopted Rules 413–415, it invited the Judicial Conference of the United States to make an alternative recommendation. 159 F.R.D. 51,52 The Judicial Conference almost unanimously opposed the rules' adoption and urged Congress to reconsider the rules because they "could diminish significantly the protections that have safe-guarded persons accused in criminal cases and parties in civil cases against undue prejudice," which "protections form a fundamental part of American jurisprudence and have evolved under long-standing rules and case law."

Rule 413 upends long standing American jurisprudence on the use of propensity evidence in a way which does not adequately protect a criminal defendant.  This Court should find that the Rule violated Due Process.

Because of the pervasive use of evidence derived from this Rule used by the Government at trial, a remand for a new trial is necessary.

Alternatively, Harvel submits that the district court erred in allowing admission of the Rule 413 evidence in this case, as this case was the proverbial "tail that wagged the dog" of the charged offenses.

"Rule 403 provides a balancing test for excluding relevant evidence, but only if the evidence's 'probative value is substantially outweighed by a danger of ... unfair prejudice.'" *United States v. Clark*, 24 F.4th 565, 579 (6th Cir. 2022). "[U]nfair prejudice, as used in Rule 403, ... refers to evidence which tends to suggest decision on an improper basis." *United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020).

In *United States v. Asher*, 910 F.3d 854 (6th Cir. 2018), this Court overturned, on a Rule 403 analysis, the use of prior bad acts to prove a civil rights violation. There, the defendant was a jailer accused of beating a prisoner. The Government introduced, over defense objection, evidence of another prisoner beating. This Court found that, while the evidence was technically admissible under Rule 404(b), its admission was prejudicial, and rendered the trial unfair. The Court determined that the issue at trial was whether the defendant committed the conduct, not his intent. Therefore,

"[w]here, as here, the probative value of the evidence is modest due to alternative methods of proof, courts must be especially careful not to allow that evidence to reach the jury if the evidence is unduly prejudicial." *Id.* at 863.  On this basis, the Court vacated the conviction.

Just as in *Asher*, here Harvel's intent was not at issue.  The issue was whether he committed the acts.  Yet the Government introduced evidence of eight other prior alleged sexual assaults.  These did not go to any admissible purpose, and by their very nature, were highly prejudicial.  The admission of these alleged acts was error, and requires vacation of the convictions.

## V.    PRE-INDICTMENT DELAY REQUIRED DISMISSAL OF THE SUPERSEDING INDICTMENT

Even though the allegations against Harvel were known to police by 2017, and resulted in state court charges in 2018, the Government waited to indict Harvel until July of 2021.  This undue delay prejudiced Harvel, and requires dismissal of the indictment.

### Standard of Review

The legal determination of whether pre-indictment delay violated the Fifth Amendment is reviewed de novo, while the district court's factual findings are reviewed for clear error. *United States v. Lively*, 852 F.3d 549, 566 (6th Cir. 2017).

Prior to trial, Harvel moved to dismiss the indictment based upon pre-indictment delay.  The Government claimed there was no delay, as they did not begin their investigation until 2020, and then COVID interfered with their prosecution.  The district court denied Harvel's motion, finding that "[b]ecause Mr. Harvel has failed to establish intentional delay, it is unnecessary for the Court to determine whether he has shown substantial prejudice to his right to

a fair trial." (R.103, Order PAGE ID # 655)  This decision was reversible error.

"[T]he Due Process Clause of the Fifth Amendment protects against oppressive pre-indictment delay." *United States v. Ross*, 703 F.3d 856, 876 (6th Cir. 2012).  "Pre-indictment delay violates the Fifth Amendment's Due Process Clause only if the defendant can show (1) 'substantial prejudice to his right to a fair trial' and (2) 'that the delay was an intentional device by the government to gain a tactical advantage.'" *United States v. Thomas*, 404 F. App'x 958, 961 (6th Cir. 2010)(internal citation omitted). "To claim pre-indictment delay in violation of the Fifth Amendment, a defendant must show that the delay itself has caused actual prejudice." *United States v. Rosse*, 716 F. App'x 453, 463 (6th Cir. 2017).

First, Harvel can show that the extreme delay in this caused actual, substantial prejudice to the defense.  Detective Wilson was the original city police officer assigned to the case.  Wilson interviewed Harvel in February of 2018.  Wilson obtained and reviewed video taken from the recycling center showing no misconduct by Harvel.  Wilson also failed to preserve other video footage which was direct exculpatory evidence. (R.92, Motion PAGE ID # 534-35)  Wilson died in December 2020, prior to the Government indicting Harvel.

38

Harvel also identified another key witness who died in May of 2019, prior to the Government indicting.  Kenneth Houston was an employee of the county, and would have testified directly against the charges alleged in count one of the superseding indictment. (R.92, Motion PAGE ID # 535)  Houston would have directly refuted that Harvel placed anyone in a shed at a landfill, and stepped into that shed with them.

Further, Harvel submits that the delay in bringing these charges was done to obtain a tactical advantage.  All of the acts allegedly performed by Harvel were completed between 2014 and 2017.  Police officers had, as of early 2017, at least one complaint regarding these acts, and had already begun their investigation.

In denying that they acted intentionally, the Government argued in the court below that they did not begin their investigation until 2020, and then the COVID pandemic caused delay. (R.97, Response PAGE ID # 583-84)  But contrary to the Government's claims, this was not a situation where police needed more time to complete their investigations.  For example, in *United States v. Baltimore*, 482 F. App'x 977 (6th Cir. 2012), this Court found that a delay almost up to the statute of limitations was not a Due Process violation because there was evidence that the DEA continued to investigate the

defendant and obtained evidence throughout the delay period. *Id.* at 982. Here, however, the entire case, including all investigation and witness interviews, had been completed by 2018. (R.147, Trial PAGE ID # 1007, 1092; R.148, Trial PAGE ID  # 1204, 1261; R.149, Trial PAGE ID # 1489, 1568, 1654, 1691, 1716)   Thus, the need for further time to investigate was not a factor.

Moreover, the Government's reliance on COVID is a red herring. COVID shutdowns did not occur in the United States until March of 2020. Again, here, all relevant parties and witnesses had been fully identified by early 2018.  The Government had another two years to act before COVID "interfered" with the prosecution.

The Government's decision to delay indictment of Harvel had a devastating impact on his right to present a complete defense to the charges. The Government's delay in prosecuting Harvel directly caused that harm to the defense.  Because the Government intentionally waited to prosecute Harvel, this Court should find a Due Process violation, and dismiss the charges.

## CONCLUSION

For the foregoing reasons, Harvel respectfully requests this Court vacate

the convictions.

Respectfully Submitted,


 /s/ *Kevin M. Schad*
Kevin M. Schad
Attorney for Appellant
Appellate Director
Office of the Federal Public Defender
Southern District of Ohio
250 E. Fifth St.
Suite 350
Cincinnati OH 45202
(513) 929-4834
Fax (513) 929-4842
Kevin_schad@fd.org

## CERTIFICATE OF COMPLIANCE

Counsel hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The relevant portions of the foregoing brief contain 8801 words in Century Schoolbook (14-point) type. The word processing software used to prepare this brief was Microsoft Office 365.

/s/ *Kevin M. Schad*

Kevin Schad
Counsel for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will send notification of such filing to the following at their e-mail addresses on file with the Court:

> Assistant United States Attorney Christopher Chen-Hsin Wang

/s/ *Kevin M. Schad*
Kevin Schad
Attorney for Appellant

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

In accordance with 6 Cir. R. 30, Appellant hereby designates as "Relevant District Court Documents" the following documents filed in the district court and available via that court's electronic CM/ECF system:

| District Court Docket Number | Page ID# | Description of Document |
|:---:|:---:|:---:|
| 3 | 4-9 | Indictment |
| 46 | 329-336 | Superseding Indictment |
| 58 | 371-377 | Motion to Dismiss - Limitations |
| 65 | 395-407 | Response in Opposition |
| 70 | 426-450 | FRE Rule 413 Notification |
| 82 | 505-508 | Memorandum and Order |
| 92 | 533-541 | Motion to Dismiss – Undue Delay |
| 96 | 553-579 | Amended FRE Rule 413 Notification |
| 101 | 636-651 | Motion in Limine |

| 103 | 654-655 | Memorandum and Order |
|-----|---------|----------------------|
| 105 | 659-677 | Response to Motion in Limine |
| 141 | 876-885 | Jury Verdict |
| 146 | 907-927 | Transcript Trial 12.6.22 |
| 147 | 956-1168 | Transcript Trial 12.7.22 |
| 148 | 1192-1395 | Transcript Trial 12.8.22 |
| 149 | 1417-1661 | Transcript Trial 12.9.22 |
| 150 | 1677-1872 | Transcript Trial 12.12.22 |
| 151 | 1887-2149 | Transcript Trial 12.13.22 |
| 152 | 2159-2343 | Transcript Trial 12.14.22 |
| 153 | 2359-2496 | Transcript Trial 12.15.22 |
| 177 | 2855-2862 | Judgment |
| 179 | 2867 | Notice of Appeal |
| 188 | 2960-2974 | Transcript Status Conf 11.30.22 |