IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MICHAEL HARVEL,

Defendant-Appellant

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

_____

BRIEF FOR THE UNITED STATES AS APPELLEE

_____

KRISTEN CLARKE
 Assistant Attorney General

ELIZABETH P. HECKER
CHRISTOPHER C. WANG
 Attorneys
 Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 514-9115
 Chris.Wang@usdoj.gov

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ............................................. 1

STATEMENT OF JURISDICTION.......................................................... 2

STATEMENT OF THE ISSUES............................................................ 2

STATEMENT OF THE CASE.............................................................. 3

1.     *Procedural History* .................................................... 3

2.     *Factual Background* .................................................... 5

     *a.*     *Harvel's Pervasive And Egregious Criminal Conduct* ...................... 5

         *(i)*     *Count 1: Harvel's Sexual Assault Of J.S.* ................................. 7

         *(ii)*     *Counts 2, 3: Harvel's Sexual Assaults Of J.C.* ......................... 8

         *(iii)*     *Counts 4,5: Harvel's Sexual Assaults Of E.D.* ...................... 10

         *(iv)*     *Counts 7-11: Harvel's Sexual Assaults Of M.M., K.J., A.O., C.S., And J.T.* ................................................. 12

         *(v)*     *Testimony Of Non-Charged Sexual Assault Victims J.W., T.M., K.M., A.H, And J.H.* ............................................. 16

     *b.*     *Pre-Trial Motions* .............................................................. 17

     *c.*     *J.S.'s Trial Testimony And Harvel's Motions For A Mistrial* ............ 19

SUMMARY OF THE ARGUMENT .................................................... 22

ARGUMENT

     I     COUNTS 2 THROUGH 5 OF THE SUPERSEDING INDICTMENT WERE TIMELY...................................................... 26

A.    *Standard Of Review* ............................................... 26

B.    *Because Counts 2 Through 5 Charged Crimes That
      18 U.S.C. 242 Provides Are Death-Eligible, They
      Are Not Subject To Section 3282's Five-Year Statute
      Of Limitations* .......................................................... 26

II    THE SUPERSEDING INDICTMENT SUFFICIENTLY
      CHARGED THAT HARVEL COMMITTED HIS CRIMES
      "UNDER COLOR OF LAW" ........................................... 32

A.    *Standard Of Review* ............................................... 32

B.    *The Superseding Indictment's Allegation That
      Harvel Acted Under Color Of Law When He Willfully
      Deprived His Victims Of Their Constitutional Right
      To Bodily Integrity And Its Statement Of The Facts
      And Circumstances Of Each Offense Satisfied Pleading
      Requirements* ............................................................. 32

III   THE DISTRICT COURT DID NOT ABUSE ITS
      DISCRETION IN DENYING HARVEL'S MOTIONS
      FOR A MISTRIAL ........................................................ 35

A.    *Standard Of Review* ............................................... 35

B.    *J.S.'s Remarks Suggesting Past Sexual Abuse
      Did Not Create Incurable Prejudice Warranting
      A Mistrial* .................................................................. 36

IV    FEDERAL RULE OF EVIDENCE 413 DOES NOT
      VIOLATE THE DUE PROCESS CLAUSE ..................... 39

A.    *Standard Of Review* ............................................... 39

B.    *The Due Process Clause Does Not Require
      Exclusion Of Propensity Evidence In Sexual-
      Assault Cases* ............................................................ 40

V     THE LENGTH OF TIME BETWEEN HARVEL'S
       CONDUCT AND HIS INDICTMENT DID NOT
       VIOLATE HIS DUE PROCESS RIGHTS ........................................ 45

       A.     *Standard Of Review* .................................................. 45

       B.     *Harvel Failed To Show That The Length Of Time
               Between His Conduct And The Government's
               Indictment Of Him Prejudiced His Right To A
               Fair Trial Or Was An Intentional Device By
               The Government To Gain A Tactical Advantage* ..................... 45

CONCLUSION ..................................................................................... 50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Coker* v. *Georgia*, 433 U.S. 584 (1977)....................................................................18

*Dowling* v. *United States*, 493 U.S. 342 (1990) .......................................................41

*Hamling* v. *United States*, 418 U.S. 87 (1974) .................................................. 32-33

*Montana* v. *Egelhoff*, 518 U.S. 37 (1996)........................................................... 41-42

*Staton* v. *Parke*, 12 F.3d 214, 1993 WL 483210 (6th Cir. Nov. 22, 1993) .............38

*United States* v. *Anderson*, 605 F.3d 404 (6th Cir. 2010) ................................. 33-34

*United States* v. *Asher*, 910 F.3d 854 (6th Cir. 2018) .............................................45

*United States* v. *Barcus*, 892 F.3d 228 (6th Cir. 2018) .............................. 35-36, 37

*United States* v. *Bell*, 516 F.3d 432 (6th Cir. 2008) ...............................................40

*United States* v. *Blackwell*, 459 F.3d 739 (6th Cir. 2006),
    cert. denied, 549 U.S. 1211 (2007)....................................................................39

*United States* v. *Briggs*, 141 S. Ct. 367 (2020).............................................. 29, 31

*United States* v. *Castillo*, 140 F.3d 874 (10th Cir. 1998) .................................. 42-43

*United States* v. *Caver*, 470 F.3d 220 (6th Cir. 2006),
    cert. denied, 549 U.S. 1326, and 549 U.S. 1353 (2007)...............................37

*United States* v. *Cunningham*, 679 F.3d 355 (6th Cir. 2012),
    cert. denied, 568 U.S. 1048, and 568 U.S. 1233 (2013)...............................26

*United States* v. *Daniels*, 653 F.3d 399 (6th Cir. 2011),
    cert. denied, 565 U.S. 1138 (2012)....................................................................32

*United States* v. *Duncan*, 763 F.2d 220 (6th Cir. 1985) .........................................46

**CASES (continued):** PAGE

*United States* v. *Ealy*, 363 F.3d 292 (4th Cir.),
   cert. denied, 543 U.S. 862 (2004)..................................................27-28

*United States* v. *Edington*, 992 F.3d 554 (6th Cir. 2021) ................................. 27, 31

*United States* v. *Edwards*, 159 F.3d 1117 (8th Cir. 1998),
   cert. denied, 528 U.S. 825 (1999).................................................28-29

*United States* v. *Enjady*, 134 F.3d 1427 (10th Cir.),
   cert. denied, 525 U.S. 887 (1998)..................................................43-44

*United States* v. *Fields*, 763 F.3d 443 (6th Cir.),
   cert. denied, 574 U.S. 947, 574 U.S. 1091,
   and 574 U.S. 1094 (2014)..................................................................35

*United States* v. *Gallaher*, 624 F.3d 934 (9th Cir. 2010),
   cert. denied, 564 U.S. 1005 (2011)................................................ 28, 30-31

*United States* v. *Gouveia*, 467 U.S. 180 (1984)..........................................46

*United States* v. *Howard*, 621 F.3d 433 (6th Cir. 2010),
   cert. denied, 562 U.S. 1278 (2011).....................................................36

*United States* v. *Howard*, 947 F.3d 936 (6th Cir. 2020).................................32

*United States* v. *Landham*, 251 F.3d 1072 (6th Cir. 2001)...............................34

*United States* v. *LaVictor*, 848 F.3d 428 (6th Cir.),
   cert. denied, 581 U.S. 1024 (2017).....................................................40

*United States* v. *Ledbetter*, 929 F.3d 338 (6th Cir.),
   cert. denied, 140 S. Ct. 317, 140 S. Ct. 490,
   140 S. Ct. 502, and 140 S. Ct. 509 (2019)......................................... 37, 39

*United States* v. *LeMay*, 260 F.3d 1018 (9th Cir. 2001),
   cert. denied, 534 U.S. 1166 (2002).................................................42-43

**CASES (continued):**                                                           **PAGE**

*United States* v. *Lively*, 852 F.3d 549 (6th Cir.),
cert. denied, 583 U.S. 933 (2017)......................................... 45-46

*United States* v. *Lovasco*, 431 U.S. 783 (1977)........................................46

*United States* v. *Mandoka*, 869 F.3d 448 (6th Cir. 2017)........................................45

*United States* v. *Mound*, 149 F.3d 799 (8th Cir. 1998),
cert. denied, 525 U.S. 1089 (1999)................................................43

*United States* v. *Payne*, 591 F.3d 46 (2d Cir.),
cert. denied, 562 U.S. 950 (2010)................................................29

*United States* v. *Rogers*, 118 F.3d 466 (6th Cir. 1997) .................................... 47-48

*United States* v. *Salisbury*, 983 F.2d 1369 (6th Cir. 1993).............................. 32, 35

*United States* v. *Schaffer*, 586 F.3d 414 (6th Cir. 2009),
cert. denied, 559 U.S. 1021 (2010)......................................... 46, 48

*United States* v. *Schaffer*, 851 F.3d 166 (2d Cir.),
cert. denied, 583 U.S. 999 (2017)......................................... 42-44

*United States* v. *Stout*, 509 F.3d 796 (6th Cir. 2007)................................................40

*United States* v. *Trujillo*, 376 F.3d 593 (6th Cir. 2004).................................. 36, 39

*United States* v. *Wright*, 343 F.3d 849 (6th Cir. 2003),
cert. denied, 541 U.S. 990 (2004)................................................47

**STATUTES:**

18 U.S.C. 242 .......................................................................... *passim*

18 U.S.C. 3231 ..............................................................................2

18 U.S.C. 3281 .......................................................................... *passim*

**STATUTES (continued):**                                    **PAGE**

18 U.S.C. 3282 ................................................................................28

18 U.S.C. 3282(a) ..................................................................... 26-27

18 U.S.C. 3598 ................................................................................28

28 U.S.C. 1291 ..................................................................................2

**RULES:**

Fed. R. Evid. 403 ........................................................... *passim*

Fed. R. Evid. 404(b) ................................................................ 40, 45

Fed. R. Evid. 404(b)(1) ..............................................................40

Fed. R. Evid. 413 ........................................................... *passim*

Fed. R. Evid. 413(a) ................................................................ 40, 43

Fed. R. Evid. 414 ........................................................................43

Fed. R. Evid. 414(a) ......................................................................43

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————————

No. 23-5416

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MICHAEL HARVEL,

Defendant-Appellant

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

———————————————

BRIEF FOR THE UNITED STATES AS APPELLEE

———————————————

**STATEMENT REGARDING ORAL ARGUMENT**

The United States does not believe that oral argument is necessary because

Harvel's arguments that federal crimes are subject to only a five-year statute of

limitations unless the death penalty may actually be imposed on the defendant, and

that Federal Rule of Evidence 413 violates the Due Process Clause have been

unanimously rejected by all other federal courts of appeals that have considered

them, and the other issues Harvel raises are insubstantial and adequately addressed

in the briefs.  The United States will appear for oral argument if this Court believes that argument will be helpful.

## STATEMENT OF JURISDICTION

This appeal is from a district court's final judgment in a criminal case.  The district court had jurisdiction under 18 U.S.C. 3231.  The court entered final judgment against defendant-appellant Michael Harvel on April 24, 2023. (Judgment, R. 177, PageID# 2855-2862).[1]  Harvel filed a timely notice of appeal on April 26, 2023.  (Notice of Appeal, R. 179, PageID# 2867).  This Court has jurisdiction under 28 U.S.C. 1291.

## STATEMENT OF THE ISSUES

1.  Whether Counts 2 through 5 of the superseding indictment were timely.

2.  Whether the superseding indictment sufficiently alleged that Harvel acted "under color of law" when, while serving as a county commissioner and Director of the Cumberland County Solid Waste Department, he sexually assaulted multiple women under his supervision.

3.  Whether the district court abused its discretion in denying Harvel's motion for a mistrial based on allegedly improper statements by a witness.

---

[1]  Citations to "R. ___" refer to documents, by number, on the district court docket sheet.  Citations to "PageID# ___" refer to the page numbers in the consecutively paginated electronic record.  Citations to "Br. ___" refer to the page numbers in Harvel's opening brief.

4.  Whether Federal Rule of Evidence 413 violates the Due Process Clause of the Fifth Amendment.

5.  Whether the length of time between Harvel's conduct and the United States' indictment of him violated Harvel's Due Process rights.

## STATEMENT OF THE CASE

*1. Procedural History*

In November 2021, a federal grand jury in the Middle District of Tennessee returned a superseding indictment charging defendant-appellant Michael Harvel with 11 counts of violation of civil rights under color of law, 18 U.S.C. 242.[2] (Superseding Indictment, R. 46, PageID# 329-337).  The indictment alleged that Harvel used his authority as a county official to sexually assault eight women he supervised as Director of the Cumberland County Recycling Center over a period

---

[2] Section 242 provides, in relevant part, that:

> Whoever, under color of any law  *  *  *  willfully subjects any person  *  *  *  to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States  *  *  *  shall be fined under this title or imprisoned not more than one year, or both; and  *  *  *  if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.

18 U.S.C. 242.

of several years, thereby willfully depriving them of their constitutional right to bodily integrity while acting under color of law. (Superseding Indictment, R. 46, PageID# 329-337). Counts 1 through 5 charged felony violations of Section 242 occurring between September 2014 and July 2017 against three victims, and collectively included four enhancements for kidnapping, three enhancements for aggravated sexual abuse, and three enhancements for causing bodily injury. (Superseding Indictment, R. 46, PageID# 330-332). Counts 6 through 11 charged misdemeanor violations of Section 242 occurring between December 2015 and December 2017 against five victims. (Superseding Indictment, R. 46, PageID# 332-336).

The case proceeded to trial in December 2022. (12/6/22 Trial Tr., R. 146, PageID# 906). After an eight-day trial involving testimony from 34 witnesses, the jury convicted Harvel on Counts 1 through 5 and 7 through 10 and acquitted him on Count 11. (Jury Verdict, R. 141, PageID# 876-885).[3] The district court sentenced Harvel to 204 months' imprisonment on Counts 1 through 5 and 12 months' imprisonment on Counts 7 through 10, with the sentences to run concurrently. (Judgment, R. 177, PageID# 2855-2857). Harvel timely appealed. (Notice of Appeal, R. 179, PageID# 2867).

---

[3] Prior to trial, the government voluntarily dismissed Count 6 as likely time-barred. (Mot. to Dismiss, R. 64, PageID# 392-394; Order, R. 74, PageID# 468).

2.    *Factual Background*

    a.    *Harvel's Pervasive And Egregious Criminal Conduct*

From 2010 to 2018, Harvel was a county commissioner and Director of the Cumberland County Solid Waste Department, which included the Cumberland County Recycling Center.  (12/13/22 Trial Tr., R. 151, PageID# 2075, 2104, 2137-2138).  As Director, he supervised both paid employees and individuals sentenced to court-ordered community service at the recycling center.  (12/13/22 Trial Tr., R. 151, PageID# 2139-2140, 2147).  Harvel possessed the unfettered authority both to hire individuals who completed their community service as paid employees and to terminate them.  (12/13/22 Trial Tr., R. 151, PageID# 2140-2142, 2147).  Most of the workers on the line sorting recyclables were female.  (12/8/22 Trial Tr., R. 148, PageID# 1238).

As set forth below, Harvel regularly groped, fondled, and directed lewd comments at female workers under his supervision and control, and ignored demands that he stop his misconduct.  He manufactured reasons to get his victims alone in secluded areas such as in locked offices or at isolated landfills, where he escalated the sexual abuse by forcing his hands onto and into his victims' clothing, forcing them to touch his genitals, and orally and vaginally raping them.  Harvel targeted women he knew were vulnerable because they had substance abuse issues and criminal backgrounds that required them to maintain employment for financial

reasons and to avoid incarceration. (12/13/22 Trial Tr., R. 151, PageID# 2147-2148). Many of Harvel's victims did not report his abuse to the police because they thought that they would not be believed because of the disparity between their own backgrounds and Harvel's position as a county official, including his friendships with the Cumberland County mayor and sheriff. Indeed, Harvel often reminded his victims that because of his status and who he knew in the community that he could do whatever he wanted to them and no one would believe them if they reported his abuse. (12/8/22 Trial Tr., R. 148, PageID# 1240-1241; 12/12/22 Trial Tr., R. 150, PageID# 1689, 1778).

The government presented direct evidence of Harvel's abuse through the testimony of 13 women—eight charged victims and five other victims—who told the court and the jury how his assaults injured them physically and emotionally and derailed their attempts to overcome substance abuse and repair their lives. Much of this testimony was corroborated by testimony from other victims and co-workers at the recycling center who either witnessed the assaults or heard contemporaneous accounts from the victims.

*(i)    Count 1:  Harvel's Sexual Assault Of J.S.*

Count 1 charged Harvel with violating Section 242 by sexually assaulting J.S., with enhancements for kidnapping and bodily injury.[4]  (Superseding Indictment, R. 46, PageID# 330; Jury Verdict, R. 141, PageID# 876).  J.S. began community service at the recycling center in October 2015 for a misdemeanor joyriding conviction.  Harvel hired her as a paid employee two months later. (12/7/22 Trial Tr., R. 147, PageID# 1126-1129; 12/8/22 Trial Tr., R. 148, PageID# 1183-1184, 1191).  In July 2017, while J.S. was working inside a shed at the Peavine Convenience Center—a recycling center satellite location that Harvel supervised—Harvel entered and locked the door behind him.  (12/7/22 Trial Tr., R. 147, PageID# 1155-1159; 12/13/22 Trial Tr., R. 151, PageID# 2083).  He grabbed J.S., picked her up, and shoved her on top of a table, ran his hands up her blouse and down her pants, and forced her to touch his genitals.  (12/7/22 Trial Tr., R. 147, PageID# 1160-1161; 12/8/22 Trial Tr., R. 148, PageID# 1254).  J.S. fought back, and Harvel stopped only when other people pulled up outside the shed to drop off garbage.  (12/7/22 Trial Tr., R. 147, PageID# 1161-1162).

Harvel's assault caused J.S. physical pain and left visible bruises on her arms, which J.H. observed.  (12/7/22 Trial Tr., R. 147, PageID# 1162-1163;

---

[4]  While all of Harvel's victims were identified by name and testified at trial, we identify them by their initials throughout this brief, consistent with Harvel's opening brief.

12/9/22 Trial Tr., R. 149, PageID# 1565, 1584).  J.S. told co-workers Randy Floyd,

J.W., and J.H. about Harvel's assault, but did not tell the police because she felt

they would not believe her.  (12/7/22 Trial Tr., R. 147, PageID# 1164-1165;

12/8/22 Trial Tr., R. 148, PageID# 1197, 1254; 12/9/22 Trial Tr., R. 149, PageID#

1451-1452, 1465-1466, 1566).  She did not tell her husband about the assault

because Harvel had threatened to have him charged with domestic abuse and sent

back to prison if she did so.  (12/7/22 Trial Tr., R. 147, PageID# 1164; 12/8/22

Trial Tr., R. 148, PageID# 1196-1197; 12/9/22 Trial Tr., R. 149, PageID# 1566-

1567).  J.S. finally quit her recycling center job in 2018 after Harvel threatened to

rape her if she did not pass a drug test.  (12/7/22 Trial Tr., R. 147, PageID# 1165-

1166; 12/8/22 Trial Tr., R. 148, PageID# 1213-1214, 1230-1231; 12/9/22 Trial Tr.,

R. 149, PageID# 1566).  She has felt guilt and shame since leaving the recycling

center for not revealing Harvel's abuse earlier.  (12/7/22 Trial Tr., R. 147, PageID#

1169-1170).

(ii)     *Counts 2, 3:  Harvel's Sexual Assaults Of J.C.*

Counts 2 and 3 charged Harvel with violating Section 242 by sexually

assaulting J.C., with statutory enhancements for kidnapping, aggravated sexual

abuse, and bodily injury.  (Superseding Indictment, R. 46, PageID# 330-331; Jury

Verdict, R. 141, PageID# 877-878).  J.C. began community service at the recycling

center in September 2014 for a misdemeanor theft conviction, and Harvel later

offered her a job as a paid employee. (12/8/22 Trial Tr., R. 148, PageID# 1314-1318, 1324, 1357). On the last day of her community service, Harvel led J.C. to his office at the end of the workday, purportedly to fill out job-related paperwork. (12/8/22 Trial Tr., R. 148, PageID# 1324). After they were in the office, Harvel closed and locked the door and groped J.C.'s breasts under her shirt. (12/8/22 Trial Tr., R. 148, PageID# 1324, 1328-1329). Harvel then told J.C. to be quiet, pulled his penis out of his pants, and grabbed the back of her head and pulled it forward to put his penis inside her mouth. (12/8/22 Trial Tr., R. 148, PageID# 1325, 1329). J.C. froze and tried to back away. (12/8/22 Trial Tr., R. 148, PageID# 1330). She took sleeping medication and drank alcohol that night to forget about Harvel's assault and did not go to work the next morning. (12/8/22 Trial Tr., R. 148, PageID# 1331-1333). J.C. did not want to return to the recycling center, but needed a place to live and would be thrown out of the house by her father if she did not have a job. (12/8/22 Trial Tr., R. 148, PageID# 1332-1334).

J.C. called the recycling center to apologize for missing work and ask to keep her job, and Harvel told her to come to his office at closing time. (12/8/22 Trial Tr., R. 148, PageID# 1332-1334). When J.C. arrived, Harvel again closed and locked the door behind him. (12/8/22 Trial Tr., R. 148, PageID# 1334-1335). As he did before, Harvel pulled out his penis and grabbed J.C.'s neck and pulled it forward to put her face on his penis. (12/8/22 Trial Tr., R. 148, PageID# 1335,

1337).  Harvel told J.C. that she needed to continue performing oral sex to keep her job.  (12/8/22 Trial Tr., R. 148, PageID# 1335-1336).  J.C. did not report Harvel's assaults to the police because she did not think they would believe her.  (12/8/22 Trial Tr., R. 148, PageID# 1344).  J.C. left her job after the second assault and did not return to the recycling center.  (12/8/22 Trial Tr., R. 148, PageID# 1338).  Because she was unemployed, her father kicked her out and she became homeless.  She relapsed on alcohol days later.  (12/8/22 Trial Tr., R. 148, PageID# 1337-1339, 1342).

        *(iii)    Counts 4, 5:  Harvel's Sexual Assaults Of E.D.*

Count 4 charged Harvel with violating Section 242 by sexually abusing E.D., with a statutory enhancement for aggravated sexual abuse.  (Superseding Indictment, R. 46, PageID# 331-332; Jury Verdict, R. 141, PageID# 879).  E.D. began community service at the recycling center in September 2015 for a theft conviction, and Harvel later hired her as a paid employee.  (12/12/22 Trial Tr., R. 150, PageID# 1773-1774, 1776-1777, 1816-1818).  In November 2015, Harvel invited E.D. to come to his office at the end of the day.  (12/12/22 Trial Tr., R. 150, PageID# 1788-1789).  When she arrived, he closed and locked the door, turned out the lights, and ordered E.D. to come around the desk to where he was standing.  (12/12/22 Trial Tr., R. 150, PageID# 1789-1790).  When E.D. refused, Harvel grabbed and lifted her onto the desk, then penetrated her vaginally with his penis.

(12/12/22 Trial Tr., R. 150, PageID# 1790-1793). Afterwards, Harvel repeatedly threatened to fire E.D. if she reported the rape. (12/12/22 Trial Tr., R. 150, PageID# 1793-1794). E.D. did not quit her recycling center job after the assault because her probation required her to have a job to avoid jail and she believed that Harvel was the one person willing to hire her. (12/12/22 Trial Tr., R. 150, PageID# 1794).

Count 5 charged Harvel with violating Section 242, with a kidnapping enhancement, for taking E.D. to a remote landfill and raping her. (Superseding Indictment, R. 46, PageID# 332; Jury Verdict, R. 141, PageID# 880). In December 2015, Harvel called E.D. on a Saturday and claimed that that he needed her help with a work-related matter. (12/12/22 Trial Tr., R. 150, PageID# 1795). He picked E.D. up at her home and drove her to a remote landfill several miles away. (12/12/22 Trial Tr., R. 150, PageID# 1796-1800). Harvel told E.D. to enter a small shed and followed her. (12/12/22 Trial Tr., R. 150, PageID# 1800). Once inside the shed, Harvel told E.D. to take her pants off, then bent her over a chair and penetrated vaginally her from behind. (12/12/22 Trial Tr., R. 150, PageID# 1800, 1803). E.D. did not report Harvel's rape to anyone, including her husband, because she felt she would not be believed over Harvel due to the disparity between his community connections and friendship with the mayor and her criminal background and substance abuse issues. (12/12/22 Trial Tr., R. 150,

PageID# 1805).  When E.D. quit her job soon thereafter, it was the happiest day of her life because Harvel could no longer touch her even though she believed she would go back to jail for failing to maintain employment.  (12/12/22 Trial Tr., R. 150, PageID# 1809-1810).

> (iv)    *Counts 7-11:  Harvel's Sexual Assaults Of M.M., K.J., A.O., C.S., And J.T.*

Count 7 charged Harvel with violating Section 242 by sexually assaulting M.M.  (Superseding Indictment, R. 46, PageID# 333; Jury Verdict, R. 141, PageID# 881).  In June 2016, Harvel hired M.M. as a paid employee at the recycling center.  (12/8/22 Trial Tr., R. 148, PageID# 1363, 1365-1366).  During M.M.'s nearly two years of employment, Harvel regularly assaulted her, including grabbing her buttocks, putting his fingers inside holes in her pants, and putting his hands up her shirt and in her shorts to touch her private area.  (12/8/22 Trial Tr., R. 148, PageID# 1367-1368, 1377-1378, 1393; 12/9/22 Trial Tr., R. 149, PageID# 1481-1482, 1560-1561, 1584).  M.M. told Harvel to stop and pushed back during each incident to no avail.  (12/8/22 Trial Tr., R. 148, PageID# 1378).  One time, Harvel put has hands down M.M.'s pants and asked if she shaved her "kitty cat." (12/8/22 Trial Tr., R. 148, PageID# 1390-1391).  M.M. continued working at the recycling center despite Harvel's abuse because she liked the flexibility it afforded her for doctor appointments and school pickups for her three small children. (12/8/22 Trial Tr., R. 148, PageID# 1393-1394, 1401-1402).  After leaving her

recycling center job, she is still afraid of running into Harvel and is constantly reminded of him. (12/8/22 Trial Tr., R. 148, PageID# 1397-1399).

Count 8 charged Harvel with violating Section 242 by sexually assaulting K.J. (Superseding Indictment, R. 46, PageID# 333-334; Jury Verdict, R. 141, PageID# 882). Shortly after hiring K.J. to work as a paid employee at the recycling center in November 2017, Harvel put his hands down the front of her pants and reached the top of her private area. (12/7/22 Trial Tr., R. 147, PageID# 990-995, 1018-1019). Harvel also groped K.J.'s breasts and buttocks daily despite her repeatedly telling him to stop. (12/7/22 Trial Tr., R. 147, PageID# 991, 995-1002, 1034-1035, 1038-1040, 1058-1061). K.J. told her sister, best friend, and immediate supervisor what happened but did not report Harvel's abuse to the police because she felt she would not be believed due to her felony conviction and Harvel's status as a churchgoing non-felon. (12/7/22 Trial Tr., R. 147, PageID# 1003-1005, 1035-1037). K.J. stayed at the recycling center only because she needed the job and quit in January 2018 after receiving a job offer from her old employer. (12/7/22 Trial Tr., R. 147, PageID# 1003, 1005-1008, 1019).

Count 9 charged Harvel with violating Section 242 by sexually assaulting A.O. (Superseding Indictment, R. 46, PageID# 334; Jury Verdict, R. 141, PageID# 883). A.O. began community service at the recycling center in February 2017 for a felony theft conviction and Harvel later hired her as a paid employee. (12/9/22

Trial Tr., R. 149, PageID# 1645, 1647-1648). While she worked at the recycling center, Harvel made sexual comments to A.O. and on a daily basis touched her waist, hip, and armpit areas without her consent. (12/9/22 Trial Tr., R. 149, PageID# 1649-1650, 1658-1659). A.O. froze up when Harvel touched her and hoped that her body language would communicate to Harvel that he should stop, but he did not. (12/9/22 Trial Tr., R. 149, PageID# 1658-1660). In late March 2017, Harvel pulled A.O.'s pants down, exposing her private parts and causing her to run out of the recycling center crying. (12/9/22 Trial Tr., R. 149, PageID# 1651-1653, 1660-1661). A.O. left her recycling center job and relapsed on drugs within two weeks. (12/9/22 Trial Tr., R. 149, PageID# 1656).

Count 10 charged Harvel with violating Section 242 by sexually assaulting C.S. (Superseding Indictment, R. 46, PageID# 335; Jury Verdict, R. 141, PageID# 884). C.S. was assigned to community service at the recycling center in July 2017 and Harvel later hired her as a paid employee. (12/7/22 Trial Tr., R. 147, PageID# 1077-1078, 1081, 1084, 1096). In December 2017, Harvel approached C.S. while she was working and twice rubbed her vaginal area over her pants. (12/7/22 Trial Tr., R. 147, PageID# 1087). C.S. left work immediately and did not return because she was humiliated and scared of Harvel, and subsequently relapsed on opioids because she felt like nothing mattered. (12/7/22 Trial Tr., R. 147, PageID# 1087-1089, 1091, 1105). She did not report Harvel's abuse because she felt that she

would not be believed due to her criminal past and drug addiction history and Harvel's status as a former county commissioner. (12/7/22 Trial Tr., R. 147, PageID# 1089-1090, 1100). C.S. did not care that she may be violating her probation by not having a job because she preferred to go back to jail rather than back to the recycling center because of Harvel's conduct. (12/7/22 Trial Tr., R. 147, PageID# 1091).

Count 11 charged Harvel with violating Section 242 by sexually assaulting J.T. (Superseding Indictment, R. 46, PageID# 335-336; Jury Verdict, R. 141, PageID# 885). J.T. began community service at the recycling center in September 2017 for a misdemeanor shoplifting conviction. (12/9/22 Trial Tr., R. 149, PageID# 1469-1471). Harvel approached her on the recycling line to talk about her job application and touched her buttocks. (12/9/22 Trial Tr., R. 149, PageID# 1472, 1484-1486). J.T. did not report the incident to any supervisor or the police. (12/9/22 Trial Tr., R. 149, PageID# 1475-1476). Harvel later hired J.T. as a paid employee. She worked at the recycling center for a while after the assault because she needed a job to provide for her mother, but finally quit around April 2018 because Harvel was looking at her in a way that made her feel uncomfortable. (12/9/22 Trial Tr., R. 149, PageID# 1476-1477, 1479, 1487).

(v)     *Testimony Of Non-Charged Sexual Assault Victims J.W., T.M., K.M., A.H, And J.H.*

In addition to the conduct charged in the superseding indictment, Harvel similarly sexually assaulted at least five other female recycling center employees.

Harvel's sexual abuse of J.W., T.M., K.M., and A.H. followed the same pattern as his sexual abuse of victims charged in the superseding indictment. All four women worked at the recycling center, both performing community service and working as paid employees. (12/9/22 Trial Tr., R. 149, PageID# 1420-1421, 1441, 1618-1620, 1636; 12/12/22 Trial Tr., R. 150, PageID# 1685-1687, 1694-1695, 1841, 1843-1845). Harvel rubbed and groped J.W., kissed her without her consent, and tried to put money in her shorts (12/8/22 Trial Tr., R. 148, PageID# 1368; 12/9/22 Trial Tr., R. 149, PageID# 1423-1425, 1445; 12/12/22 Trial Tr., R. 150, PageID# 1852); regularly ran his hands down T.M.'s shirt and down inside her pants at the waistband (12/9/22 Trial Tr., R. 149, PageID# 1616, 1625-1626); groped K.M.'s buttocks on the recycling line and her breasts in the break room (12/12/22 Trial Tr., R. 150, PageID# 1841, 1847, 1851-1852); and made lewd comments to A.H. and groped her buttocks and her body inside her shorts and under her shirt while she worked on the recycling line (12/12/22 Trial Tr., R. 150, PageID# 1685, 1687-1689). None of these women reported Harvel's abuse to the police because they did not think they would be believed due to their criminal

history. (12/9/22 Trial Tr., R. 149, PageID# 1429-1430, 1630-1631; 12/12/22 Trial Tr., R. 150, PageID# 1690, 1848, 1853).

Harvel even sexually assaulted J.H., the Cumberland County community service officer who monitored the hours of community service workers at the recycling center during Harvel's entire tenure as director, twice touching her breasts over her clothing. (12/8/22 Trial Tr., R. 148, PageID# 1238-1240; 12/9/22 Trial Tr., R. 149, PageID# 1544-1545, 1557-1560). J.H. told Harvel "[f]ifty or more" times to stop abusing women, to which Harvel would respond by smirking and acting like it was no big deal. (12/9/22 Trial Tr., R. 149, PageID# 1567). J.H. did not report Harvel's abuse to the police because Harvel was friends with the sheriff. (12/9/22 Trial Tr., R. 149, PageID# 1571).

b.    *Pre-Trial Motions*

i. Prior to trial, Harvel moved the district court to dismiss various counts of the superseding indictment for insufficient pleading and untimeliness. (Mot. to Dismiss, R. 58, PageID# 371-377). The district court denied Harvel's motion to dismiss on both grounds. (Dist. Ct. Mem. and Order, R. 82, PageID# 505-508).

Regarding untimeliness, the court concluded that because Section 242 provides that a violation that includes kidnapping or aggravated sexual abuse is punishable by death, Counts 2 through 5 have no statute of limitations under 18 U.S.C. 3281, which provides that "[a]n indictment for any offense punishable by

death may be found at any time without limitation." This was true, the court held, notwithstanding that the death penalty could not actually be applied to Harvel's convictions on those counts.[5] (Dist. Ct. Mem. and Order, R. 82, PageID# 507).

With respect to insufficient pleading, the district court concluded that the superseding indictment need only allege the essential elements of a Section 242 violation—*i.e.*, that Harvel acted under color of law when he deprived women who he supervised of their constitutional right to bodily integrity—and that the indictment did so. (Dist. Ct. Mem. and Order, R. 82, PageID# 508).

ii. Harvel later moved the district court to dismiss the superseding indictment on Due Process Clause grounds for unnecessary delay. (Mot. to Dismiss, R. 92, PageID# 533-541). The district court denied Harvel's motion, concluding that he failed to show that the length of time between Harvel's conduct and his indictment was intentionally prolonged by the government to gain a tactical advantage. (Dist. Ct. Mem. and Order, R. 103, PageID# 654-655).

iii. Harvel also moved to exclude the United States' evidence of sexual assaults not charged in the superseding indictment. He argued that Rule 413, which allows admission of other sexual assaults committed by a defendant for consideration by the jury on any matter to which it is relevant, violates the Due

---

[5] The Supreme Court held in *Coker* v. *Georgia*, 433 U.S. 584, 592 (1977) (plurality opinion), that a sentence of death for the rape of an adult violates the Eighth Amendment to the Constitution.

Process Clause. He further argued that evidence of other sexual assaults was otherwise inadmissible under Federal Rule of Evidence Rule 403, which excludes evidence where the probative value is substantially outweighed by the danger of unfair prejudice. (Mot. in Limine, R. 101, PageID# 636-651).

The district court rejected Harvel's due process argument, citing the holdings of seven federal courts of appeals that Rule 413 does not violate the Due Process Clause or any other constitutional provision. (11/30/22 Hr'g Tr., R. 188, PageID# 2970). The court also rejected Harvel's Rule 403 argument but decided to offer a limiting instruction to cure any potential prejudice. The court instructed the jury that it was not tasked with determining whether Harvel had in fact committed other sexual assaults, but that it could consider evidence of other such assaults on any matter to which it is relevant. (12/9/22 Trial Tr., R. 149, PageID# 1468, 1613, 1645; 12/12/22 Trial Tr., R. 150, PageID# 1700-1701, 1858).

  c.  *J.S.'s Trial Testimony And Harvel's Motions For A Mistrial*

  i.  Harvel's trial began in December 2022. On the second day of trial, the government asked J.S. to "generally" speak, without going into detail, about what, if anything, she had told Harvel about her past in an effort to persuade him to stop his assaults. (12/7/22 Trial Tr., R. 147, PageID# 1136-1137). J.S. testified that she had told Harvel that she "went through issues as a child, and I'd be damned if I'm going to go through this as an adult." (12/7/22 Trial Tr., R. 147, PageID# 1136-

1137).  Harvel immediately objected and then moved for a mistrial on the grounds

that the prejudice from J.S.'s testimony substantially outweighed its probative value

under Rule 403, and that it violated the court's pre-trial ruling prohibiting testimony

about the abuse J.S. suffered as a child.  (12/7/22 Trial Tr., R. 147, PageID# 1136-

1141).  The United States responded that it had instructed J.S. not to discuss her

childhood sex abuse and argued that any prejudice could be cured by a limiting

instruction.  (12/7/22 Trial Tr., R. 147, PageID# 1136-1139, 1141-1142).

In considering Harvel's motion for a mistrial, the district court first observed

that this Court's precedent provides that a new trial for erroneously admitted

evidence is appropriate only where such evidence is so prejudicial that a limiting

instruction cannot cure the harm.  (12/7/22 Trial Tr., R. 147, PageID# 1142-1143).

The court then applied a multi-factor test this Court has set forth for determining

whether incurable prejudice exists and concluded that a new trial was unwarranted

because (1) J.S.'s improper testimony was unsolicited; (2) the government's line of

questioning was reasonable; (3) the court intended to give a limiting instruction to

the jury; (4) the government did not exhibit bad faith; and (5) the remark was a

small part of the evidence against Harvel and was quickly addressed.  (12/7/22 Trial

Tr., R. 147, PageID# 1143-1144).  Accordingly, the district court denied Harvel's

motion for a mistrial.  The court instructed the jury to disregard J.S.'s testimony

suggesting past sexual abuse and not to consider it for any purpose.  (12/7/22 Trial

Tr., R. 147, PageID# 1145).

ii.  Later, on cross-examination in response to a question about whether

Harvel followed through on his threat to rape her, J.S. responded that he had not,

but that she had been raped as a child and had told Harvel that she would not go

through it again as an adult.  (12/8/22 Trial Tr., R. 148, PageID# 1214).  The court

immediately called a bench conference and excused the jury.  (12/8/22 Trial Tr., R.

148, PageID# 1214-1215).  Before the jury had exited, however, and after she had

left the witness stand, J.S. pointed in the direction of Harvel and his counsel and

stated, "You're disgusting."  (12/8/22 Trial Tr., R. 148, PageID# 1215-1216).

Harvel renewed his motion for a mistrial and argued that J.S.'s two statements

about being raped as a child and her derogatory statement toward him would

distract the jury from purported inconsistencies in her testimony.  (12/8/22 Trial Tr.,

R. 148, PageID# 1215-1218).  In response, the United States argued that a mistrial

was not warranted because J.S. intended her statements about her past sexual

assault to explain why she thought Harvel's threat of rape was credible.  (12/8/22

Trial Tr., R. 148, PageID# 1218-1219).

The district court denied Harvel's renewed motion after determining that

J.S.'s remarks were only a small part of the evidence against Harvel and that the

jury could be trusted to follow a clear instruction from the court to disregard the

improper statements. (12/8/22 Trial Tr., R. 148, PageID# 1219-1220). Outside the presence of the jury, the court reminded J.S. not to bring up her childhood sexual assault and to refrain from making statements when she is off the witness stand and not under oath. (12/8/22 Trial Tr., R. 148, PageID# 1221-1222). The court then instructed the jury that its verdict should be based only on admitted evidence, and that it should not consider statements that take place off the witness stand. (12/8/22 Trial Tr., R. 148, PageID# 1223). The court further instructed the jury that, when deliberating, it should not consider J.S.'s testimony suggesting a past sexual assault because it was not relevant. (12/8/22 Trial Tr., R. 148, PageID# 1224).

iii.  After the close of the government's case, Harvel renewed his two motions for a mistrial based on J.S.'s remarks. (12/12/22 Trial Tr., R. 150, PageID# 1871). The district court denied the renewed motions for the reasons already stated. (12/12/22 Trial Tr., R. 150, PageID# 1873).

## SUMMARY OF THE ARGUMENT

This Court should affirm Harvel's conviction. Harvel argues that Counts 2-5 were untimely, that the indictment was insufficient to allege that he acted under "color of law," that J.S.'s allegedly improper remarks created incurable prejudice warranting a mistrial, that Federal Rule of Evidence 413 violates the Due Process Clause, and that the length of time between his criminal conduct and his indictment

violates the Due Process Clause. The district court properly rejected each of these arguments as meritless and this Court should as well.

1. Counts 2 through 5 of the superseding indictment were timely. These counts alleged Section 242 violations that included kidnapping, aggravated sexual abuse, or both—conduct that Section 242 states "may be sentenced to death." As such, the plain language of Section 3281 provides that the offenses have no statute of limitations. Every federal court of appeals that has considered the applicability of Section 3281 to crimes designated by federal statute as death-eligible has taken this position regardless of whether the death penalty may in fact be applied to the specific crimes committed by the defendant.

2. The superseding indictment sufficiently pleaded that Harvel committed his sexual assaults "under color of law." The indictment alleged that Harvel was the Director of the Cumberland County Solid Waste Department whose official duties included supervising workers at the Recycling Center, its satellite locations, and several nearby county landfills. It also charged that he supervised dozens of women who did community service or worked as paid employees at the recycling center, including the victims charged in the indictment. Each count of the indictment tracked Section 242's statutory language, including any statutory enhancements, and thus set forth the elements of the offense charged. Each count also included the relevant time period and the specific misconduct on which the

charge was based.  Harvel was thus fairly informed of each charge against him so that he could mount a defense.

3.  The district court did not abuse its discretion in denying Harvel's motions for a mistrial based on J.S.'s remarks suggesting past sexual abuse.  The court did not err, much less clearly err, in its factual findings applying this Court's five-factor test for determining whether allegedly improper testimony caused incurable prejudice:  (1) the remarks were not solicited by the government; (2) the government's line of questioning was reasonable; (3) the court immediately gave a clear and forceful instruction to the jury to disregard the improper statements; (4) the government did not act in bad faith; and (5) the remarks were a small part of the evidence against Harvel.  The district court also did not abuse its discretion in denying Harvel's motions for a mistrial based on J.S.'s off-the-stand derogatory statement aimed at Harvel and his counsel.

4.  Federal Rule of Evidence 413, which allows admission of other sexual assaults committed by a defendant for consideration by the jury on any matter to which it is relevant, does not violate the Due Process Clause.  Other federal courts of appeals unanimously have rejected the argument that admitting evidence of other sexual assaults violates a fundamental conception of justice protected by the Due Process Clause.  Moreover, as courts repeatedly have recognized, Rule 403's safeguards protecting a defendant against admission of evidence that is unfairly

prejudicial preserves Rule 413's constitutionality.  The district court also did not abuse its discretion in rejecting Harvel's argument that evidence of his uncharged sexual assaults was inadmissible under Rule 403.

5.  The length of time between Harvel's conduct and the United States' indictment of him did not violate Harvel's Due Process rights, as he failed to satisfy either part of this Court's test for establishing unconstitutional pre-indictment delay.  First, Harvel failed to show actual, substantial prejudice to his right to a fair trial, because he did not show that the testimony of two deceased witnesses whom he claimed were key to his defense would have been exculpatory and that the substance of their testimony could not be obtained through other means.  Second, Harvel failed to show that any delay was attributable to an intentional effort by the government to gain a tactical advantage because he did not offer any evidence to call into question the government's assertion that the 15-month delay between the start of its investigation and Harvel's initial indictment was necessary to conduct a thorough investigation.

# ARGUMENT

# I

## COUNTS 2 THROUGH 5 OF THE SUPERSEDING INDICTMENT WERE TIMELY

A.    *Standard Of Review*

This Court "review[s] de novo a district court's denial of a motion to dismiss an indictment on statute of limitations grounds." *United States* v. *Cunningham*, 679 F.3d 355, 373 (6th Cir. 2012) (citation omitted), cert. denied, 568 U.S. 1048, and 568 U.S. 1233 (2013).

B.    *Because Counts 2 Through 5 Charged Crimes That 18 U.S.C. 242 Provides Are Death-Eligible, They Are Not Subject To Section 3282's Five-Year Statute Of Limitations*

Chapter 213 of Title 18 of the United States Code establishes statutes of limitations for federal crimes. For most crimes*,* "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. 3282(a). The requirement that the government bring a criminal case against a defendant within five years of his alleged commission of the crime does not apply, however, where a different limitations period is "otherwise expressly provided by law." *Ibid.* One such law is Section 3281, which provides that "[a]n indictment for any offense punishable by death may be found at any time without limitation." 18 U.S.C. 3281.

In determining the statute of limitations applicable to a particular crime, the starting point is the plain language of the statute itself, which is also "the ending point if the plain meaning of that language is clear." *United States* v. *Edington*, 992 F.3d 554, 556 (6th Cir. 2021) (citation omitted). Harvel does not dispute that Section 242 states, in relevant part, that a defendant "may be sentenced to death" if he deprives an individual of rights under color of law through conduct that "include[s] kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse." 18 U.S.C. 242. Because Counts 2 through 5 of the superseding indictment charged Section 242 violations with statutory enhancements for kidnapping, aggravated sexual abuse, or both, they necessarily charged offenses that Section 242 makes death-eligible. As such, those counts are "offense[s] punishable by death" under Section 3281. 18 U.S.C. 3281. Counts 2 through 5 are thus subject to Section 3281 rather than Section 3282(a) and are not subject to a statute of limitations.

Although this Court has not yet addressed the applicability of Section 3281 to a crime that a statute makes death-eligible but cannot actually be punished by death, *every* federal court of appeals that has done so has adopted the government's position. In *United States* v. *Ealy*, 363 F.3d 292 (4th Cir.), cert. denied, 543 U.S. 862 (2004), for example, the defendant advanced the exact argument Harvel makes here—that offenses for which a federal statute expressly allows a death sentence

but for which the death penalty could not constitutionally be imposed are not "punishable by death" under Section 3281. *Id.* at 296. The Fourth Circuit rejected this argument, holding that Section 3281's applicability "depends on whether the death penalty may be imposed for the crime under the enabling statute, *not* on whether the death penalty is in fact available for defendants in a particular case." *Id.* at 296-297 (internal quotation marks and citation omitted).

Similarly, in *United States* v. *Gallaher*, 624 F.3d 934 (9th Cir. 2010), cert. denied, 564 U.S. 1005 (2011), the defendant, a member of a Native-American tribe, argued that Section 3282's five-year statute of limitations applied to his first-degree murder indictment because his tribe had not elected to allow capital punishment for first-degree murder committed on tribal land. *Id.* at 937, 939-940; see 18 U.S.C. 3598 (permitting Indian tribes to elect whether to permit the death penalty for crimes committed within their jurisdiction). The Ninth Circuit rejected this argument, concluding that the district court correctly applied Section 3281 because even though the court could not impose death on the defendant, "premeditated murder is generally punishable by death under federal law." *Gallaher*, 624 F.3d at 940.

In *United States* v. *Edwards*, 159 F.3d 1117 (8th Cir. 1998), cert. denied, 528 U.S. 825 (1999), the defendants advanced a similar argument, asserting that their federal arson prosecutions were time-barred because the death penalty

procedures applicable when they committed their crimes were unconstitutional. *Id.* at 1128. The Eighth Circuit rejected the defendants' argument, reasoning that Section 3281 "derives its justification from the serious nature of the crime rather than from a concern about, for example, what procedural protections those who face a penalty as grave as death are to receive." *Ibid.* (alteration and citation omitted); cf. *United States* v. *Payne*, 591 F.3d 46, 59 (2d Cir.) ("An offense 'punishable by death,' within the meaning of § 3281, is one for which the statute authorizes death as a punishment, regardless of whether the death penalty is sought by the prosecution or ultimately found appropriate by the factfinder or the court."), cert. denied, 562 U.S. 950 (2010).

The Supreme Court has applied the same principle in interpreting the military analogue to Section 3281. In *United States* v. *Briggs*, 141 S. Ct. 367 (2020), the Court considered whether the Uniform Code of Military Justice's (UCMJ's) provision that a military offense "punishable by death, may be tried and punished at any time without limitation" applied to a rape that the UCMJ provided could be "punished by death" notwithstanding that the Constitution forbids the death penalty for rape. *Id.* at 468-470 (citations omitted). The Court agreed with the government that there was no statute of limitations, reasoning that the term "punishable" in the UCMJ is a "term of art that is defined by the specification of the punishments set out in the penalty provisions of the UCMJ." *Id.* at 470.

Harvel's arguments to the contrary lack merit. First, he argues (Br. 18) that Section 3281's "punishable by death" clause applies only to offenses that may *actually* be punished by death, and that neither kidnapping nor aggravated sexual abuse are capital crimes under Supreme Court precedent or substantive federal criminal law. But as explained, every court of appeals that has considered the issue has concluded that the language of the offense-creating statute—here, Section 242—determines whether an offense is "punishable by death" under Section 3281, not whether death could actually be imposed on the particular defendant.

In the alternative, Harvel contends (Br. 19-20) that the "punishable by death" language is at best ambiguous and invites this Court to consider the legislative history of the amendment to Section 242 that added this language, which he claims indicates that Congress could not have intended for Section 3281 to apply to kidnapping and aggravated sexual abuse offenses. To the contrary, Congress's decision to designate certain offenses as "punishable by death," and thus to allow them to be charged at any time "is a calibration of the seriousness of the crime as viewed by Congress, not of the punishment that could actually be imposed on the defendant in an individual case." *Gallaher*, 624 F.3d at 940-941. Moreover, Harvel's plea (Br. 21 (citation omitted)) that "criminal statutes of limitation are to be liberally interpreted in favor of repose" fails to advance his argument because "courts should not apply that principle to negate the plain

meaning of the statutory text." *Edington*, 992 F.3d at 556; see *Gallaher*, 624 F.3d at 941 (rejecting defendant's invocation of the rule of lenity because, *inter alia*, "broad elimination of the death penalty does not shift the legislative assessment of the seriousness of individual offenses").

Harvel does not discuss or even cite most of the decisions of the other courts of appeals that have addressed this issue and rejected the argument he makes here. He does argue (Br. 20-21), however, that the Supreme Court's decision in *Briggs* is not dispositive because it was decided in the military rather than civilian context. Harvel provides no principled justification for this distinction. Harvel is correct that the government in *Briggs* argued that "a rape committed by a service member may cause special damage by critically undermining unit cohesion and discipline," 141 S. Ct. 471-472. But rapes committed by public officials acting under color of law also cause special damage, such as breeding fear and distrust of law enforcement and other public officials. This is particularly true where, as here, the public official in question also controlled his victims' freedom, financial security, or both. The district court correctly concluded that Counts 2 through 5 are not time-barred.[6]

---

[6] Even if Counts 2 through 5 were time-barred (and they are not), Harvel is incorrect (Br. 21-22) in arguing that he would be entitled to a new trial on the remaining counts. To succeed on his claim that "the prejudicial spillover * * * influenced the jury's decision on the remaining counts, [Harvel] must show either

## II

## THE SUPERSEDING INDICTMENT SUFFICIENTLY CHARGED THAT HARVEL COMMITTED HIS CRIMES "UNDER COLOR OF LAW"

A.    *Standard Of Review*

Where as here, a proper objection was made below, this Court reviews de

novo the sufficiency of an indictment.  *United States* v. *Howard*, 947 F.3d 936, 942

(6th Cir. 2020).  This Court reviews for abuse of discretion a district court's denial

of a request for a bill of particulars.  See *United States* v. *Salisbury*, 983 F.2d 1369,

1375 (6th Cir. 1993).

B.    *The Superseding Indictment's Allegation That Harvel Acted Under Color Of*
      *Law When He Willfully Deprived His Victims Of Their Constitutional Right*
      *To Bodily Integrity And Its Statement Of The Facts And Circumstances Of*
      *Each Offense Satisfied Pleading Requirements*

"[A]n indictment is sufficient if it, first, contains the elements of the offense

charged and fairly informs a defendant of the charge against which he must defend,

and, second, enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense."  *Hamling* v. *United States*, 418 U.S. 87, 117

---

compelling prejudice or that the prosecutor acted in bad faith in bringing the
charge."  *United States* v. *Daniels*, 653 F.3d 399, 414 (6th Cir. 2011) (internal
quotation marks and citation omitted), cert. denied, 565 U.S. 1138 (2012).  Harvel
cannot make either showing.  The government did not act in bad faith in bringing
Counts 2 through 5 because it had a reasonable belief that the counts were timely,
as evidenced by the numerous federal courts of appeals cases (see pp. 27-29,
*supra*) supporting its position.  Harvel also cannot demonstrate compelling
prejudice, as the government "presented more than adequate, direct evidence to
sustain [Harvel's] conviction on the remaining counts."  *Id.* at 415.

(1974). To satisfy this standard, an indictment generally need only "set forth the offense in the words of the statute itself" so long as those words unambiguously "set forth all the elements necessary to constitute the offence intended to be punished." *Ibid.* (citation omitted). Moreover, the indictment must include "a statement of the facts and circumstances as will inform the accused of the specific offence * * * with which he is charged." *Id.* at 117-118 (citation omitted).

The superseding indictment against Harvel easily satisfied these pleading requirements. Each count of the indictment precisely tracked Section 242's statutory language, and thus set forth the elements of the offense, by alleging that Harvel (1) willfully; and (2) under color of law; (3) deprived his victims of their constitutional right to bodily integrity. Counts 1 through 5 further alleged that these charges included kidnapping, aggravated sexual abuse, or both. These allegations fairly informed Harvel of the charges against which he needed to defend and thus satisfied *Hamling*'s first element. See *United States* v. *Anderson*, 605 F.3d 404, 411 (6th Cir. 2010). Each count also included the relevant time period and the specific misconduct on which the particular charge against Harvel was based, satisfying *Hamling*'s second element. See *ibid.*

Harvel's arguments are without merit. First, Harvel contends (Br. 24) that the indictment failed to allege facts supporting its allegation that he engaged in misconduct "under color of law," and thus failed to inform him of the relevant

facts and circumstances that would allow him to mount a proper defense to this element of Section 242.  In fact, the superseding indictment alleged that Harvel was the Director of the Cumberland County Solid Waste Department; that as part of his official duties he supervised workers at the Recycling Center, its satellite locations, and several nearby county landfills; that during his tenure he supervised dozens of women who served community service at the Recycling Center, worked there as paid employees, or both; and that between 2014 and 2018 he supervised the eight unnamed female victims referenced in the indictment.  (Superseding Indictment, R. 46, PageID# 329).

Harvel's argument (Br. 24) that the superseding indictment "failed to allege any facts supporting the allegation that Harvel's actions were made 'under color of law,'" improperly conflates what is necessary for an *indictment* with what is necessary for a *conviction*.  In rejecting a similar argument, this Court concluded that "[t]he indictment need only set forth elements that, *if proven*, constitute a violation of the relevant statute" and that the defendant was free to argue at trial that an element of the statute was not satisfied.  *Anderson*, 605 F.3d at 412; see *United States* v. *Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001) ("[C]ourts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based.").  So too here.

No more persuasive is Harvel's contention (Br. 24-25) in the alternative that he was entitled to a bill of particulars setting forth factual information not included in the indictment. "A bill of particulars is meant to be used as a tool to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes," and not "as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Salisbury*, 983 F.2d at 1375. "[A] defendant is not entitled to discover all the overt acts that might be proven at trial." *Ibid.* Because the superseding indictment was sufficiently detailed to inform Harvel of the charges he was facing and their factual basis, the district court did not abuse its discretion in denying his request for a bill of particulars. See *ibid.*

## III

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING HARVEL'S MOTIONS FOR A MISTRIAL

*A. Standard Of Review*

This Court "review[s] a district court's denial of a motion for a mistrial for abuse of discretion." *United States* v. *Fields*, 763 F.3d 443, 462 (6th Cir.), cert. denied, 574 U.S. 947, 574 U.S. 1091, and 574 U.S. 1094 (2014). "An abuse of discretion occurs when [the Court] ha[s] a definite and firm conviction that the trial court committed a clear error of judgment by relying on clearly erroneous findings of fact, using an erroneous legal standard, or improperly applying the law." *United*

*States* v. *Barcus*, 892 F.3d 228, 235 (6th Cir. 2018) (internal quotation marks and citation omitted). "Deference is given to the district court because the trial judge is in the best position to determine the nature of the alleged * * * misconduct and is also in the best position to determine appropriate remedies for any demonstrated misconduct." *United States* v. *Trujillo*, 376 F.3d 593, 613 (6th Cir. 2004) (internal quotation marks, citation, and alterations omitted).

B.    *J.S.'s Remarks Suggesting Past Sexual Abuse Did Not Create Incurable Prejudice Warranting A Mistrial*

"Where a defendant argues that the district court should have granted a mistrial due to improper testimony, such as in the present case, [this Court] must first consider whether the challenged testimony was in fact improper." *United States* v. *Howard*, 621 F.3d 433, 458 (6th Cir. 2010), cert. denied, 562 U.S. 1278 (2011). "If [the Court] conclude[s] that the testimony was improper, then [it] must determine whether the challenged testimony was so clearly improper and prejudicial to the defendants that the harm could not be erased by any instruction which the court might give." *Id.* at 459 (internal quotation marks and citation omitted). This Court considers the following five factors to determine whether improper testimony causes incurable prejudice:

> (1) whether the remark was unsolicited, (2) whether the government's line of questioning was reasonable, (3) whether the limiting instruction was immediate, clear, and forceful, (4) whether any bad faith was evidenced by the government, and (5) whether the remark was only a small part of the evidence against the defendant.

*United States* v. *Ledbetter*, 929 F.3d 338, 362 (6th Cir.) (citation omitted), cert.

denied, 140 S. Ct. 317, 140 S. Ct. 490, 140 S. Ct. 502, and 140 S. Ct. 509 (2019).

"In making this inquiry, the primary concern is fairness to the defendant." *United*

*States* v. *Caver*, 470 F.3d 220, 243 (6th Cir. 2006) (internal quotation marks and

citation omitted), cert. denied, 549 U.S. 1326, and 549 U.S. 1353 (2007).

Assuming, *arguendo*, that J.S.'s remarks suggesting past sexual abuse were

improper, the district court did not abuse its discretion in denying Harvel's motions

for a mistrial, as the court's findings on the above factors were not erroneous,

much less clearly erroneous. See *Barcus*, 892 F.3d at 235. First, the court

reasonably found that the government did not purposefully elicit J.S.'s improper

remarks on direct examination given government counsel's representation that it

cautioned her not to talk about childhood sex abuse. (12/7/22 Trial Tr., R. 147,

PageID# 1141-1143). Second (and relatedly), the court found that the

government's line of questioning was reasonable. (12/7/22 Trial Tr., R. 147,

PageID# 1143). Third, after conferring with counsel, the court immediately

decided to give, and did give, a clear and forceful instruction to the jury that it

should disregard the statements and not consider them when deliberating. (12/7/22

Trial Tr., R. 147, PageID# 1143, 1145; 12/8/22 Trial Tr., R. 148, PageID# 1219-

1220, 1223-1224). Fourth, the court found no bad faith by the government, and

Harvel concedes as much (Br. 29) on appeal. (12/7/22 Trial Tr., R. 147, PageID#

1143-1144). Fifth, the court determined that the improper remarks were a small part of the evidence against Harvel. (12/7/22 Trial Tr., R. 147, PageID# 1144; 12/8/22 Trial Tr., R. 148, PageID# 1219).

The district court also did not abuse its discretion in denying Harvel's motions for a mistrial based upon J.S.'s off-the-stand remark that Harvel or his counsel was "disgusting." This Court has held that the decision on whether to grant a mistrial based upon such remarks is within the "sound discretion" of the district court. See *Staton* v. *Parke*, 12 F.3d 214, 1993 WL 483210, at *2 (6th Cir. Nov. 22, 1993). After conferring with trial counsel, the court immediately admonished J.S. to refrain from making statements when she is off the witness stand and not under oath. (12/8/22 Trial Tr., R. 148, PageID# 1222). The court then gave a clear and forceful instruction to the jury that its verdict should be based only on admitted evidence, and that it should not consider statements that take place off the witness stand. (12/8/22 Trial Tr., R. 148, PageID# 1223). Given the isolated nature of J.S.'s outburst, the district court reasonably concluded that its instruction to the jury would cure any prejudice.

Harvel's challenges (Br. 29) to these rulings fall far short of showing an abuse of discretion. First, his contentions that the government "directly and intentionally elicit[ed] the topic of her child abuse" and "knew that the questions they asked about her past experience would elicit an emotional response" find no

support in the record, where the government represented that it specifically instructed J.S. not to talk about such abuse.  Second, Harvel's argument (Br. 29) that the district court's limiting instruction did not cure the prejudice from J.S.'s improper testimony because "the jury could not have been reasonably expected to forget what they heard and saw" improperly invites this Court to substitute its judgment for that of the district court on the appropriate remedy.  See *Trujillo*, 376 F.3d at 613.  Finally, Harvel's argument (Br. 29) that J.S.'s remarks were not a "small part of the evidence" because they occurred over two days and twice resulted in the jury being excused from the courtroom misunderstands that this factor compares the improper remarks to the entire evidence in this trial, which lasted eight days and included testimony from 34 witnesses.  See *Ledbetter*, 929 F.3d at 363.

## IV

## FEDERAL RULE OF EVIDENCE 413 DOES NOT VIOLATE THE DUE PROCESS CLAUSE

*A.     Standard Of Review*

This Court "review[s] all challenges to district court evidentiary rulings, including constitutional challenges, under the abuse of discretion standard." *United States* v. *Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006), cert. denied, 549 U.S. 1211 (2007).  "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those

decisions will not be lightly overturned." *United States* v. *Bell*, 516 F.3d 432, 440

(6th Cir. 2008) (citation omitted).

B.     *The Due Process Clause Does Not Require Exclusion Of Propensity Evidence In Sexual-Assault Cases*

Federal Rule of Evidence 413 provides, in relevant part, that "[i]n a criminal

case in which a defendant is accused of a sexual assault, the court may admit

evidence that the defendant committed any other sexual assault," and such

evidence "may be considered on any matter to which it is relevant." Fed. R. Evid.

413(a). Rule 413 "create[s] [an] exception[] to the general restriction of Rule

404(b), permitting the admission of similar prior bad act evidence in sexual assault

* * * cases to show the propensity of the defendant to commit the crime

charged."[7] *United States* v. *Stout*, 509 F.3d 796, 801 (6th Cir. 2007). Rule 413

"represent[s] an understanding that sexual assault is different from regular prior

bad acts" and "reflects [Congress's] belief of the probative nature of such

testimony." *United States* v. *LaVictor*, 848 F.3d 428, 450 (6th Cir.), cert. denied,

581 U.S. 1024 (2017). "Evidence otherwise admissible under Rule 413 is subject

to Rule 403 balancing, allowing the exclusion of relevant evidence if its probative

value is substantially outweighed by the danger of unfair prejudice." *Ibid.*

---

[7] Rule 404(b) provides, in relevant part, that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

Harvel argues (Br. 32, 34) that Rule 413 is "invalid on its face" because it "upends long standing American jurisprudence on the use of propensity evidence in a way which does not adequately protect a criminal defendant," and thus "violates long standing notions of Due Process." Every federal court of appeals that has considered this argument has rejected it.

Rule 413 violates the Due Process Clause's test of "fundamental fairness" only if "the introduction of evidence [of other sexual assaults committed by the defendant] is so extremely unfair that its admission [in sexual-assault cases] violates fundamental conceptions of justice" that "lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency." *Dowling* v. *United States*, 493 U.S. 342, 352-353 (1990) (internal quotation marks and citations omitted). Because the Due Process Clause has "limited operation" beyond "the specific guarantees enumerated in the Bill of Rights," the Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* at 352. A defendant who asserts a due-process challenge to Rule 413 bears the burden to show that the prohibition on other-acts evidence in sexual-assault cases is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Montana* v. *Egelhoff*, 518 U.S. 37, 47 (1996) (plurality opinion) (internal quotation marks and citation omitted).

This Court's "primary guide" in determining whether the prohibition on propensity evidence in sexual-assault cases is fundamental is historical practice. *Egelhoff*, 518 U.S. at 43. Although this Court has not engaged in an independent examination of the historical record, several federal courts of appeals have concluded that while the general ban on propensity evidence may be consistent with fundamental conceptions of justice, "the evidence regarding the historical practice of allowing (or disallowing) propensity evidence *in prosecutions for sex crimes* is mixed." *United States* v. *Schaffer*, 851 F.3d 166, 179 (2d Cir.), cert. denied, 583 U.S. 999 (2017); accord *United States* v. *LeMay*, 260 F.3d 1018, 1025 (9th Cir. 2001) (observing that many state courts "have routinely allowed propensity evidence in sex-offense cases, even while disallowing it in other criminal prosecutions"), cert. denied, 534 U.S. 1166 (2002); *United States* v. *Castillo*, 140 F.3d 874, 881 (10th Cir. 1998) (conducting a thorough review of "the history of evidentiary rules regarding a criminal defendant's sexual propensities" and concluding that "[it] is ambiguous at best").

Given Harvel's burden to show that a ban on propensity evidence in sexual-assault cases is a fundamental conception of justice, "the lack of conclusive historical evidence is a sufficient ground on which to reject his due process claim." *Schaffer*, 851 F.3d at 179; see *LeMay*, 260 F.3d at 1026 ("Because LeMay has the burden of proving that the ban on propensity evidence is a matter of fundamental

fairness, the divergence in historical evidence does cut against his position."); *Castillo*, 140 F.3d at 881 (concluding that ambiguity in the historical record favors the government).

Courts also have recognized that the fact that Rule 403's balancing test applies to Rule 413 evidence is an added safeguard to ensure that Rule 413 passes constitutional muster. Every federal court of appeals that has addressed a due-process challenge to Rule 413 or Rule 414 (the evidentiary rule authorizing admission of propensity evidence in child-molestation cases)[8] has cited Rule 403's protections in rejecting such challenges. See *Schaffer*, 851 F.3d at 180; *LeMay*, 260 F.3d at 1026; *United States* v. *Enjady*, 134 F.3d 1427, 1433 (10th Cir.), cert. denied, 525 U.S. 887 (1998); *United States* v. *Mound*, 149 F.3d 799, 800-801 (8th Cir. 1998), cert. denied, 525 U.S. 1089 (1999). As the Second Circuit observed in *Schaffer*, "[w]here in a particular instance the admission of evidence of prior sexual assaults would create 'undue prejudice' and threaten due process, district courts can and should, by operation of Rule 403, exclude that evidence and ensure the defendant's right to a fair trial." 851 F.3d at 180.

---

[8] Rule 414 provides, in relevant part, that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation" that "may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a).

Harvel fails to grapple with the holdings of these cases or the applicability of Rule 403's balancing test to Rule 413 evidence. Instead, he argues (Br. 33-34) that because federal courts of appeals have relied upon Rule 403's safeguards to uphold Rule 413's constitutionality, Rule 413 *alone* violates the Due Process Clause. Harvel provides no support for viewing Rule 413 in isolation, and all the above decisions upholding the use of propensity evidence in sexual-abuse cases suggest the opposite. Indeed, in *Enjady*—a decision Harvel cites to support his argument—the Tenth Circuit concluded that "without the safeguards embodied in Rule 403 we would hold [Rule 413] unconstitutional," 134 F.3d at 1433, indicating that the two rules were intended to operate in tandem to ensure that the constitutional rights of both sexual assault victims and defendants are protected.

Harvel argues in the alternative (Br. 35-36 (citation omitted)) that even if Rule 413 is constitutional, the district court erred in admitting the evidence of his other sexual assaults because its "probative value is substantially outweighed by a danger of * * * unfair prejudice" under Rule 403. This argument warrants little discussion. Although Harvel correctly observes that evidence of his other sexual assaults may be highly prejudicial by its very nature, it is not necessarily *unfairly* prejudicial—a distinction that Harvel fails to refute and that is best left to the district court's discretion to determine. See *Schaffer*, 851 F.3d at 182. Because Harvel does not even attempt to show that this evidence was any more unfairly

prejudicial than typical Rule 413 evidence, see *United States* v. *Mandoka*, 869 F.3d

448, 456 (6th Cir. 2017), the district court acted well within its discretion in

admitting it.[9]

## V

## THE LENGTH OF TIME BETWEEN HARVEL'S CONDUCT AND HIS INDICTMENT DID NOT VIOLATE HIS DUE PROCESS RIGHTS

*A.      Standard Of Review*

This Court reviews de novo the "mixed question of law and fact" of whether

a pre-indictment delay violated the defendant's due process rights and reviews for

clear error the factual findings upon which the district court relied in rejecting the

defendant's motion to dismiss for delay.  *United States* v. *Lively*, 852 F.3d 549,

566 (6th Cir.) (citation omitted), cert. denied, 583 U.S. 933 (2017).

*B.      Harvel Failed To Show That The Length Of Time Between His Conduct And The Government's Indictment Of Him Prejudiced His Right To A Fair Trial Or Was An Intentional Device By The Government To Gain A Tactical Advantage*

The Due Process Clause "has a *limited* role to play in protecting against

oppressive [pre-indictment] delay;" namely, it prevents violations of "fundamental

conceptions of justice which lie at the base of our civil and political institutions,

---

[9] Harvel's citation (Br. 36) of *United States* v. *Asher*, 910 F.3d 854 (6th Cir. 2018), for the proposition that this evidence "did not go to any admissible purpose" misses the mark because that case concerned the admissibility of other-acts evidence under Rule 404(b), not Rule 413.

and which define the community's sense of fair play and decency." *United States* v. *Lovasco*, 431 U.S. 783, 789-790 (1977) (internal quotation marks and citations omitted; emphasis added). Prosecutors do not deviate from this principle "when they defer seeking indictments until they have probable cause to believe an accused is guilty." *Id.* at 791. To that end, a successful due process claim for pre-indictment delay requires that a defendant show "substantial prejudice to his right to a fair trial *and* that the delay was an intentional device by the government to gain a tactical advantage." *United States* v. *Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009) (citation omitted), cert. denied, 559 U.S. 1021 (2010). "*Both* parts of the test must be met before a defendant is entitled to have the indictment dismissed." *United States* v. *Duncan*, 763 F.2d 220, 222 (6th Cir. 1985). Moreover, "[b]oth elements are difficult to establish, and a defendant who moves to have his indictment dismissed for pre-indictment delay faces an uphill battle." *Lively*, 852 F.3d at 566.

1. Harvel cannot satisfy either part of this Court's test for establishing unconstitutional pre-indictment delay. To show "substantial prejudice to his right to a fair trial," *Schaffer*, 586 F.3d at 424 (citation omitted), a "defendant must show that the delay 'caused him *actual* prejudice in presenting his defense,'" *id.* at 425 (quoting *United States* v. *Gouveia*, 467 U.S. 180, 192 (1984)). This is a "nearly insurmountable" standard, as "proof of actual prejudice is always speculative."

*United States* v. *Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997).  Although "[t]he death of a potential witness during the pre-indictment period may demonstrate the requisite prejudice if the defendant can demonstrate that exculpatory evidence was lost and could not be obtained through other means," to succeed on this showing the defendant must indicate "what the witness's testimony would have been and whether the substance of the testimony was otherwise available." *Id.* at 475. Moreover, "[e]ven where a defendant specifies what a deceased witness's testimony would have been, actual prejudice is difficult to prove." *Ibid.*

Harvel argues (Br. 38-39) that he was prejudiced by the deaths of Detective Wilson and Ken Houston prior to his indictment because they were potential witnesses key to his defense.  His argument falls far short of carrying his "heavy burden to prove that pre-indictment delay caused actual prejudice." *United States* v. *Wright*, 343 F.3d 849, 860 (6th Cir. 2003) (citation omitted), cert. denied, 541 U.S. 990 (2004).

Harvel urges (Br. 38) that Wilson would have testified that surveillance video of the recycling center showed no misconduct by Harvel.  But Harvel fails to explain whether this video still exists, and if so, why it could not have been introduced through another witness.  He also states that Wilson "failed to preserve other video footage which was direct exculpatory evidence" (Br. 38) but does not explain what this video footage contains or why it would have been exculpatory.

With respect to Houston, Harvel claims that Houston would have refuted the government's claim that Harvel went into a shed with J.S. at the Peavine Convenience Center, but he offered no evidence below that Houston was present at the time of the sexual assault. (U.S.' Resp. to Mot. to Dismiss, R. 97, PageID# 588).

In any event, even if Harvel could show that these two witnesses would have offered exculpatory testimony the substance of which could not have been obtained through other means, he still could not prove actual prejudice because it is unlikely that such testimony would have affected the outcome of the trial given the overwhelming evidence of Harvel's guilt. See *Rogers*, 118 F.3d at 476.

2. Harvel also fails to satisfy the second part of the test for unconstitutional pre-trial delay: "that the delay was an intentional device by the government to gain a tactical advantage." *Schaffer*, 586 F.3d at 424 (citation omitted). "It is well-established that a delay resulting from investigative efforts does not deprive a defendant of due process, even if his defense may have been somewhat prejudiced by the lapse of time." *Rogers*, 118 F.3d at 476 (internal quotation marks, citation, and alteration omitted).

The government explained below that it opened its investigation into Harvel's criminal misconduct in April 2020, at the height of restrictions caused by the COVID-19 pandemic, including restrictions on travel and limited availability

of investigative grand juries. (U.S.' Resp. to Mot. to Dismiss, R. 97, PageID# 583). The government further explained that the 15 months it spent investigating Harvel before indicting him was necessary given the extent of his misconduct and the resources required to interview dozens of victims and witnesses and review thousands of pages of documentary evidence. (U.S.' Resp. to Mot. to Dismiss, R. 97, PageID# 583). Harvel's insistence (Br. 39-40) that the government did not need more time to complete its investigation because "the entire case, including all investigation and witness interviews, had been completed by 2018" conflates the *local* investigation, which began in 2017, with the *federal* one, which did not begin until April of 2020.

Accordingly, the district court did not err, much less clearly err, in concluding that Harvel "fail[ed] to set forth any evidence that the delay was an intentional device by the government to gain a tactical advantage." (Dist. Ct. Mem. and Order, R. 103, PageID# 654).

**CONCLUSION**

This Court should affirm Harvel's conviction.

Respectfully submitted,

KRISTEN CLARKE
  Assistant Attorney General

s/ Christopher C. Wang
ELIZABETH P. HECKER
CHRISTOPHER C. WANG
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 514-9115
  Chris.Wang@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I certify, pursuant to Federal Rule of Appellate Procedure 32(g):

1.  This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 11,445 words.

2.  This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5), and the type-style requirements of Federal Rules of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, 14-point font.

s/ Christopher C. Wang
CHRISTOPHER C. WANG
 Attorney

Date:  October 30, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2023, I electronically filed the foregoing

BRIEF FOR THE UNITED STATES AS APPELLEE with the Clerk of the Court

for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF

system. I further certify that all participants in this case are registered CM/ECF

users and that service will be accomplished by the appellate CM/ECF system.

s/ Christopher C. Wang
CHRISTOPHER C. WANG
 Attorney

# ADDENDUM

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RECORD ENTRY NUMBER | DOCUMENT DESCRIPTION | PAGEID# RANGE |
|---|---|---|
| 46 | Superseding Indictment | 329-337 |
| 58 | Mot. to Dismiss | 371-377 |
| 64 | Mot. to Dismiss | 392-394 |
| 74 | Order | 468 |
| 82 | Dist. Ct. Mem. and Order | 505-508 |
| 92 | Mot. to Dismiss | 533-541 |
| 97 | U.S.' Resp. to Mot. to Dismiss | 580-590 |
| 101 | Mot. in Limine | 636-651 |
| 103 | Dist. Ct. Mem. and Order | 654-655 |
| 141 | Jury Verdict | 876-885 |
| 146 | 12/6/22 Trial Tr. | 903-932 |
| 147 | 12/7/22 Trial Tr. | 933-1173 |
| 148 | 12/8/22 Trial Tr. | 1174-1408 |
| 149 | 12/9/22 Trial Tr. | 1409-1666 |

| RECORD ENTRY NUMBER | DOCUMENT DESCRIPTION | PAGEID# RANGE |
|---|---|---|
| 150 | 12/12/22 Trial Tr. | 1667-1877 |
| 151 | 12/13/22 Trial Tr. | 1878-2154 |
| 177 | Judgment | 2855-2862 |
| 179 | Notice of Appeal | 2867 |
| 188 | 11/30/22 Pretrial Hr'g Tr. | 2944-2977 |